# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **DAINGEAN TECHNOLOGIES LTD.,** | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § No. 2:23-cv-000123-JRG-RSP |
| | § |
| **AT&T CORP., AT&T MOBILITY LLC, AT&T MOBILITY II LLC, and AT&T SERVICES INC.,** | § |
| | § Jury Trial Demanded |
| | § |
| Defendants, | § |
| | § |
| **ERICSSON INC.,** | § |
| | § |
| Intervenor, | § |
| | § |
| **NOKIA OF AMERICA CORPORATION,** | § |
| | § |
| Intervenor. | § |

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND <u>SUPPLEMENTAL INTERROGATORY RESPONSE</u>

## Table of Contents

I.   AT&T Has Not Complied with Its Discovery Obligations ....................................................... 3

II.   Ericsson and Nokia Have Not Complied with Their Discovery Obligations .......................... 4

III.  Conclusion ................................................................................................................................ 7

This is a patent infringement case about Defendant AT&T's 5G network and the base stations used within that network, ███████████████████████ Intervenors Ericsson and Nokia. The "Accused Functionality" of the 5G network at issue involves: (1) SIB transmissions via broadcast or on-demand; (2) configured grant type 2 scheduling; and (3) beamforming algorithms using handset inputs from nearby cells. Plaintiff Daingean has requested technical documents about AT&T's 5G network, including its architecture, components, software, and configuration relating to the Accused Functionality. Daingean has also requested technical documents about the Accused Functionality of the relevant base stations from Ericsson and Nokia. Finally, Daingean has served interrogatories on AT&T regarding the architecture, hardware, software, and configuration of its 5G network as related to the Accused Functionality.

On December 13, 2023, Daingean outlined numerous production deficiencies in a letter to AT&T and Intervenors (collectively, "Defendants"). After two meet-and-confers, Daingean re-urged its requests in a letter on February 16, 2024. Defendants responded on February 23, 2024. Since then, Defendants produced *some* of the specific documents Daingean identified. However, Defendants' productions remain deficient, prompting Daingean to seek relief from the Court.

Under the Discovery Order (Dkt. 49) and P.R. 3-4, Defendants are required to provide Daingean with "all documents, electronically stored information, and tangible things in [Defendants'] possession, custody, or control…that are relevant to the pleaded claims or defenses," (Dkt. 49 ¶3(b)) including "[s]ource code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant." P.R. 3-4. Because Defendants refuse to provide the full scope of discovery required by this Court, Daingean moves to compel the following from AT&T, Ericsson, and Nokia:

**From AT&T**: (a) Network architecture documents detailing the components of AT&T's 5G network, including details of which components interact with AT&T's base stations regarding the Accused Functionality; (b) Base station configuration documents detailing the particular configuration and software revision of each 5G base station in AT&T's network, including details of when those configurations and software revisions were updated; (c) Documents detailing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ including the business justifications for, technical implementation of, timing of, and results of those tests; and (d) Updated response to interrogatory number 2 to detail base station configurations and software.[1]

**From Ericsson and Nokia**: (a) Build scripts for the produced source code revisions, including any scripts used to compile code, tests, or documentation; (b) Release notes for each source code revision; (c) Source code changelog for the produced source code detailing the author, date, files, and explanation of changes made to the source code related to the Accused Functionality; and (d) Data from issue tracking systems used to manage specifications, requirements, customer issues, and/or debug issues for base station products and their software related to the Accused Functionality.

**From Ericsson**: (a) Documents detailing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; (b) Documents detailing support of ▇▇▇▇▇▇▇▇▇▇▇▇ and (c) Non-source code documents produced on the source code computer.

**From Nokia**: Documents detailing ▇▇▇▇▇▇▇ including studies, specifications, requirements, business justifications, functionality, and rollout plans.

---

[1] On the most recent meet and confer, AT&T stated that it would again supplement its response to interrogatory number 2 to include details regarding base station configuration and software revision rollout. If that supplement is satisfactory, Daingean will withdraw this request.

2

## I.  AT&T Has Not Complied with Its Discovery Obligations

On October 10, 2023, Daingean served AT&T with interrogatories requesting details about relevant development, implementation, and updates to AT&T's 5G network (Interrogatory No. 1) and details about relevant third-party hardware and software within AT&T's 5G network (Interrogatory No. 2). *See* Ex. A. Additionally, on December 13, 2023, Daingean specifically requested documents from AT&T: (1) "identifying and detailing the 5G-capable or 5G-aware base stations deployed within AT&T's networks ('Accused Products')"; (2) "detailing the testing of the Accused Products"; (3) "identifying and detailing the software deployments (past and present versions) for the Accused Products"; and (4) "identifying and detailing the licensed features enabled on the Accused Products and the times during which those features have been enabled." Ex. B (request numbers 5-7 and 9). AT&T has failed to fully respond.

*Technical documents*: AT&T has not produced documents detailing its 5G networks or architecture of those networks pertaining to the Accused Functionality. Instead, AT&T has produced ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ purportedly detailing configuration settings for those base stations. But AT&T has failed to confirm the nature of these ▉▉▉▉▉▉ documents in its interrogatory responses. AT&T has only identified base station models within its network but has not specifically indicated that the ▉▉▉▉▉▉ configuration settings were deployed, when the configuration settings were deployed, or how the configuration settings were deployed. Further, AT&T has not detailed when specific software revisions were deployed to its 5G base stations. AT&T should be ordered to produce documents detailing the its base station configurations and deployed software versions for those base stations. Further, AT&T should produce documents detailing the licensed features that it uses (and has used) within its 5G base stations.

***Interrogatory No. 2***: AT&T has failed to fully respond to Interrogatory Number 2, which requests details concerning the 5G base stations deployed in AT&T's network, their corresponding software revisions, and the features licensed for each base station. *See* Ex. A. Instead, AT&T merely states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ AT&T's open-ended response provides virtually no information about AT&T's software deployments. Thus, Daingean cannot know which software releases are at issue during which times within AT&T's network, which is especially important in the quickly developing and evolving area of 5G technology. Different software versions, by definition, provide different functionality. Thus, AT&T should be compelled to provide details about the software versions deployed to its 5G base stations.

## II.  Ericsson and Nokia Have Not Complied with Their Discovery Obligations

On December 13, 2023, Daingean requested documents from Ericsson and Nokia "detailing the design, development, and testing of software deployments (past and present versions) for the Accused Products." Ex. B (request number 8). In response, both have predominantly produced source code for numerous software versions, customer-facing feature descriptions lacking detail regarding the implementation of those features, and contracts with AT&T. Daingean requests that Ericsson and Nokia be compelled to produce the following key categories of relevant documents, which are currently lacking from their respective productions:

***General technical documents***: Both Intervenors have failed to produce documents existing in the gap between highly technical source code and high-level customer facing documents. There is a significant information and comprehensibility gap between these document types. Typically, internal documentation governs the focus of source code development, including for example requirements, specifications, technical reviews, and viability testing. This documentation is

4

dictated in part by Ericsson's and Nokia's internal protocols. Daingean cannot guess the specific documents to request from Defendants regarding the design, development, testing, and rollout of their 5G base station products. Daingean cannot further identify specific documents when it does not know Defendants' internal processes. Instead, Defendants should search for and produce relevant technical documents, regardless of whether those documents are maintained on local servers, cloud-based servers, wikis, or web-based systems (such as JIRA).

In the parties' meet-and-confers, Defendants argued that they provided ample source code and technical documents *sufficient* to show the base stations' operation. However, Defendants cannot unilaterally "limit discovery relating to technical operation to what *they* deem Plaintiff needs." See *LG Elecs., Inc. v. Hitachi, Ltd.*, No. 5:07-cv-90, 2009 U.S. Dist. LEXIS 147716, at *10 (E.D. Tex. March 2, 2009) (emphasis added). P.R. 3-4 requires a defendant to "produce more than the bare minimum of what *it* believes is sufficient." See *Edward D. Loli Trust v. Avigilon Corp.*, Civ. No. 2:10-cv-605, 2012 U.S. Dist. LEXIS 164425, at *9 (E.D. Tex. Nov. 16, 2012) (emphasis in original). Rather, Defendants must produce "all other relevant materials reasonably needed for Plaintiff to understand *for itself* how the technology at issue operates and functions." See *Edward D. Loli Trust*, 2012 U.S. Dist. LEXIS 164425, at *13 (emphasis in original); *LaserDynamics, Inc. v. Asus Computer Int'l*, No. 2:06-cv-348, 2009 U.S. Dist. LEXIS 3878, at *16-17 (E.D. Tex. Jan. 21, 2009) (requiring production of "drafts or revisions to source code[,]…documents describing any modifications that the defendants have made to the source code").

**Documents associated with source code**: Ericsson and Nokia have produced multiple source code versions of their base station software, each comprising many thousands of files that

5

███████████████████████████████████████████████████████████

can only be reviewed in-person at counsels' offices in Dallas.[2] Intervenors should be compelled to provide additional, relevant documentation to guide the review of their voluminous source code productions, including at least build scripts, release notes, source code changelogs, and issue tracking documents. Each is highly relevant for evaluating the source code.

Build scripts specifically identify which code modules are compiled into a particular software version release. Release notes identify changes made to each release, including addition of new features, removal of deprecated features, or enhancements to existing features. Source code changelogs identify the authors, timing, and explanations of source code modifications (including, for example, which requirement or feature the modification relates to). This information is important for identifying relevant documents and witnesses concerning the development of specific functionality within the source code. Additionally, issue tracking systems are often used to track the design, development, implementation, and testing of features for products and within source code. ████████████████████████████████████████████

████████████████████████████████████ Intervenors must identify any issue tracking systems and produce relevant documents from those systems.[3]

***Deficiencies related to specific features***: ████████████████████████████████

████████████████████████ These documents include references to particular components of the ██████ however, Ericsson has not produced documents detailing t████████████████████ ██████ Ericsson should be compelled to produce documents detailing its ████████████ Further, Ericsson and AT&T have indicated that a█████████████████████████

---

[2] As discussed above, Daingean does not know which of these versions have been deployed in AT&T's network; nor does it know the timing of deployments for the different software versions.
[3] When Daingean raised ████████████████████████████████████████████████████
████████████ but maintained that all document sources had been searched.

6



However, AT&T and Ericsson have only produced PowerPoint presentations ▇▇▇▇▇▇▇ AT&T and Ericsson should produce all documents about ▇▇▇▇▇▇▇

▇▇▇▇▇▇▇ Additionally, ▇▇▇▇▇▇▇ however, Nokia has not produced any documentation about that feature, including its requirements, design, implementation, testing, or analysis. Nokia should be compelled to do so.

***Non-source code documents produced on the source code computer***: Ericsson has improperly produced non-source code documents on the source code computers, and it refuses to produce them otherwise. These documents are not source code; they describe or diagram features implemented in source code. *See, e.g.*, Ex. C (paper copies provided via FedEx to the Court). These documents should be produced in non-source code form, which significantly enhances Daingean's ability to review them. To the extent the documents are used to generate other documentation, those documents should also be produced.

### III.     Conclusion

Defendants have failed to provide the discovery required by this Court's Discovery Order and Local Patent Rules. For the reasons detailed above, Daingean requests the Court to compel Defendants to produce the materials requested by Daingean.

Dated: April 12, 2024

Respectfully submitted,

*/s/ R. Allan Bullwinkel*
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile: (713) 751-2341

Michael Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric Enger
Texas Bar No. 24045833
eenger@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
Alden Harris
Texas Bar No. 24083138
aharris@hpcllp.com
Blaine Larson
Texas Bar No. 24083360
blarson@hpcllp.com
Michael Dunbar
Texas Bar No. 24125213
mdunbar@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main St., Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

Andrea L. Fair
Texas Bar No. 24078488
andrea@wsfirm.com
WARD, SMITH & HILL, PLLC

8

P.O. Box 1231
Longview, Texas 75606
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Counsel for Plaintiff Daingean Technologies Ltd.*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on April 12, 2024, a copy of the foregoing was served electronically through the U.S. District Court, Eastern District of Texas ECF system to all counsel of record whom are Filing Users of the Court's Electronic Filing System.

*/s/ R. Allan Bullwinkel*
R. Allan Bullwinkel

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), we hereby certify that the undersigned complied with the meet and confer requirement of Local Rule CV-7(h). A meeting was held over video conference on April 8, 2024. The parties could not agree on a resolution to the issues discussed above. Further, this motion is opposed.

*/s/ Amir H. Alavi*
Amir H. Alavi
Lead Counsel

*/s/ Andrea L. Fair*
Andrea L. Fair
Local Counsel

9