IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DAINGEAN TECHNOLOGIES LTD. | § § § | |
| *Plaintiff,* | § § | CIVIL ACTION NO. 2:23-CV-00123-JRG-RSP |
| v. | § § | |
| AT&T CORP., AT&T MOBILITY LLC, AT&T MOBILITY II LLC, and AT&T SERVICES INC. | § § § § | JURY TRIAL DEMANDED |
| *Defendants,* | § § | |
| ERICSSON INC. and NOKIA OF AMERICA CORPORATION | § § § § | |
| *Intervenors.* | § § | |

## PLAINTIFF DAINGEAN TECHNOLOGIES LTD.'S OMNIBUS MOTIONS *IN LIMINE*

████████████████████████████████████

## TABLE OF CONTENTS

1.     Evidence, testimony, or argument regarding entities and other litigations or patent assertions related to Atlantic IP or Gerald Padian. .............................................................. 1

2.     Evidence, testimony, or argument referring to any patent owned by Defendants/Intervenors, or claim charts thereto, including the number of 5G patents owned by Defendants/Intervenors and the total number of 5G patents, unless the specific patent or claim chart is relied upon by a damages expert as a technically comparable patent for purposes of relying on a license as comparable. ................................................................... 5

3.     Evidence, testimony, or argument that the '803 Patent is essential to any standard, including the 5G Standard. ............................................................................................. 8

4.     Expert testimony regarding Defendants' exhaustion defense. ........................................... 9

5.     Evidence, testimony, or argument regarding or suggesting that Daingean was legally obligated to provide pre-suit notice. ................................................................................ 10

<TABLE OF AUTHORITIES>

# TABLE OF AUTHORITIES

**Cases**

*Arigna Tech. Ltd. v. Nissan Motor Company, Ltd.*,
  Case No. 2:22-cv-00126-JRG-RSP, Dkt. No. 323 (E.D. Tex. October 24, 2022) .................... 2

*Barkan Wireless IP Holdings L.P., v. T-Mobile US, Inc. et al*,
  Case No. 2:21-cv-34-JRG-RSP, Dkt. No. 227 (E.D. Tex. Dec. 16, 2021)................................. 6

*Bio-Tech. Gen. Corp. v. Genentech, Inc.*,
  80 F.3d 1553 (Fed. Cir. 1996) ...................................................................................... 5

*Cameco Indus. v. La. Cane Mfg.*,
  1995 U.S. Dist. LEXIS 11294 (E.D. La. July 27, 1995) .............................................. 6

*Commonwealth Sci. and Indus. Research Org. v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015) .................................................................................... 7

*Glaros v. H.H. Robertson Co.*,
  797 F.2d 1564 (Fed. Cir. 1986) .................................................................................... 5

*Kaist IP US LLC v. Samsung Electronics Co., Ltd., et al.*,
  Case No. 2:16-cv-1314-JRG-RSP, Dkt. No. 416 (E.D. Tex. May 3, 2018)............................... 6

*Lionra Techs. Ltd. v. Fortinet, Inc.*,
  Case No. 2:22-cv-00322-JRG-RSP, Dkt. No. 509 (E.D. Tex. May 9, 2024)............... 1, 2, 6, 10

*Quanta Comp., Inc. v. LG Elecs., Inc.*,
  553 U.S. 617 (2008)...................................................................................................... 9

*Simple Air, Inc. v. Google Inc. et al*,
  Case No. 2:11-cv-416-JRG, Dkt. No. 571 (E.D. Tex. Jan. 8, 2014) ......................................... 7

*Solas OLED Ltd. v. Samsung Elecs. Co. Ltd.*,
  Case No. 2:21-cv-105-JRG-RSP, Dkt. No. 308 (E.D. Tex. May 24, 2022)............................... 6

*Wireless Alliance, LLC v. AT&T Mobility LLC*,
  No. 2:23-CV-0095-RWS-RSP, Dkt. No. 251 (E.D. Tex. Oct. 28, 2024).................................. 8

████████████████████████████████████████████

Daingean moves the Court *in limine* to preclude AT&T, Ericsson, and Nokia, their attorneys, and witnesses from directly or indirectly offering any arguments, testimony, or evidence concerning the matters set forth below, unless and until such matters are first called to the Court's attention—out of the presence of the jury—and a favorable ruling is received as to their admissibility.

**1.    Evidence, testimony, or argument regarding entities and other litigations or patent assertions related to Atlantic IP or Gerald Padian.**

Daingean moves under Rules 401, 402 and 403 to preclude introduction of any evidence, testimony, or argument as to entities and other litigations or patent assertions related to Atlantic IP or Gerald Padian. Daingean does not seek to preclude evidence regarding (i) ███████████ ██████████████████████████████ or (ii) the facts and circumstances by which Daingean became the owner of the '803 Patent, i.e., ████████████████████ ████████████████████████████████████████ ███████████████████████. But aside from those topics, Daingean seeks to exclude evidence, testimony, and argument regarding Atlantic IP and any other Irish entity supported by Atlantic IP or with which Mr. Padian is involved, including other litigations involving those entities, their business models and ownership structures, the number of patents owned by those entities, and their investors, including ████████████████████████████.

The Court has granted similar motions *in limine* in prior litigations involving entities relating to Mr. Padian. For example, in *Lionra Techs. Ltd. v. Fortinet, Inc.*, the Court granted Lionra's motion *in limine* as to companies and other litigation related to Mr. Padian, but did not bar questions as to Mr. Padian regarding ████████████████████████████████ ██ *Lionra Techs. Ltd. v. Fortinet, Inc.*, Case No. 2:22-cv-00322-JRG-RSP, Dkt. No. 509 at 1 (Plaintiff's MIL No. 1) (E.D. Tex. May 9, 2024). In *Arigna Tech. Ltd. v. Nissan Motor Company,*

1

████████████████████████████████████

*Ltd.*, the Court granted Arigna's motions *in limine* as to any reference to Arigna's investors, disparaging descriptions of Arigna's business model, and references to other litigations brought by the parties, their investors, or related entities. *Arigna Tech. Ltd. v. Nissan Motor Company, Ltd.*, Case No. 2:22-cv-00126-JRG-RSP, Dkt. No. 323 at 2 (Plaintiff's MIL Nos. 1 & 2) (E.D. Tex. October 24, 2022).

Daingean asks for relief consistent with the Court's prior rulings in *Lionra* and *Arigna,* as Defendants' recent filings reflect their intent to confuse the jury and prejudice Daingean by referring to Daingean, Atlantic IP, and other Irish entities supported by Atlantic IP, which they pejoratively refer to as a ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



Dkt. No. 157 at 1. In another filing, Defendants described Daingean as ████████████████

████████████████████████████████████████

██████ Dkt. No. 158 at 2. During his deposition, Defendants questioned Mr. Padian extensively about ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████. Ex. 1 (Padian Dep. Tr. 39:21-41:18). ████████████

2

████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ .

Defendants' recently-disclosed deposition designations further confirm their intent to introduce evidence about ████████████████████████████████████████████████ ████████████████████████████████ . For example, Defendants' deposition designations for Atlantic IP's Chief Financial Officer, Ellen Barresi, relate to the structure of Atlantic IP Services, LLC, and Atlantic IP Services, Limited, and how those entities relate to Daingean and other Irish entities they support (Ex. 2, Barresi Dep. Tr. 12:10-23, 13:6-16, 24:13-25:1, 34:24-35:14); ██████ ██████████████████████████████████████ (*id.*, Tr. 15:14-25); ████████████████████ ████████████ (*id.*, Tr. 72:15-73:11); how Atlantic IP relates to ████████████████████ ████████████████████ (*id.*, Tr. 15:17:-17:5); ████████████████ (*id.*, Tr. 92:9-19); and distribution of licensing income (*id.*, Tr. 70:5-12, 115:3-18).

Defendants' deposition designations for Atlantic IP's VP of Finance, Daniel Feighery, similarly relate to the creation and ownership of various Irish entities supported by Atlantic IP (Ex. 3, Feighery Dep. Tr. 19:14-22, 89:4-10); ████████████████████████████████████████ ████████████████████████ (*id.*, Tr. 32:22-33:8); ████████████████████████████ (*id.*, Tr. 30:5-31:23, 141:21-142:19); and Mr. Padian's interest ████████████████████████ ██ (*id.*, Tr. 19:14-44, 89:4-14, 112:25-113:25).

Defendants' deposition designations for Atlantic IP's Chief Operating Officer, Ciaran O'Gara, follow this same pattern, with testimony relating to the corporate structure of the Atlantic IP entities and Mr. Padian's role in those entities (Ex. 4, O'Gara Dep. Tr. 12:2-13:21, 14:14-15:9, 15:19-22, 17:23-18:22, 20:19-22:22, 23:1-6); day-to-day operations and boards of directors of the Irish entities supported by Atlantic IP (*id.*, Tr. 23:21-24:5, 24:10-25:11, 36:24-39:12); the

██████████████████████████████████████

████████████████████████████████ (*id.*, Tr. 22:6-17, 22:20-22, 23:1-6, 23:21-24:5, 24:10-25:11); ████████████████████████████████████████

██████ (*id.*, Tr. 31:12-32:8, 64:24-65:23); ██████████████████████ (*id.*, Tr. 36:24-38:12);

██████████████████████████████ (*id.*, Tr. 111:21-112:18).

Defendants' deposition designations for ████████████████████████ include testimony regarding ████████████████████████████████████████ (Ex. 5, Prusko Dep. Tr. 12:2-13:20, 15:10-19:7, 22:13-25, 23:15-24:25, 27:24-28:21, 29:14-21, 35:23-38:22; 42:1-43:18, 46:15-47:14, 51:12-17); ██████████████████████████

███████████████████████████ (*id.*, Tr. 39:21-41:24, 53:3-6, 56:5-58:4, 58:21-59:2, 65:5-66:13, 73:24-75:23, 76:3-9, 86:12-88:8, 91:22-93:24); the corporate structure of and relationship between Arigna and Atlantic IP (*id.*, Tr. 77:22-25, 78:8-11, 78:24-17); ████████████████████████ (*id.*, Tr. 89:1-4, 90:10-91:2); and Daingean's relationship with Atlantic IP and Arigna (*id.*, Tr. 96:23-98:11).

Lastly, Defendants' deposition designations for Atlantic IP's Chief Technology Officer, Colm O'Riordan, include testimony regarding the number of patents acquired by Atlantic IP or the Irish entities supported by Atlantic IP. Ex. 6, O'Riordan Dep. Tr. 21:9-22:3.

The Court's Standing MIL Order No. 13 precludes the parties from introducing evidence, testimony, or argument regarding ***either party's*** other litigations or arbitrations. Applying the reasoning and concerns of juror confusion and undue prejudice underlying Standing MIL Order No. 13, the Court should preclude the parties from introducing evidence, testimony, and argument concerning the litigation history of other entities to which Atlantic IP and Mr. Padian are related, as well as the structure, relationship, and finances of those other entities, to the extent those entities are unrelated to Daingean or the '803 Patent.

███████████████████████████████████████████

The Court's Standing MIL Order No. 11 precludes the parties from introducing evidence, testimony, or argument referring to any other person or entity in disparaging ways. If neither party may create the impression that the other is a "shell company," "playing the lawsuit lottery," a "shakedown artist," or a "patent assertion entity," then Defendants should likewise be precluded from referring to Daingean as part of a "web of entities" that license patents, with Mr. Padian at its center.

2.    <u>**Evidence, testimony, or argument referring to any patent owned by Defendants/Intervenors, or claim charts thereto, including the number of 5G patents owned by Defendants/Intervenors and the total number of 5G patents, unless the specific patent or claim chart is relied upon by a damages expert as a technically comparable patent for purposes of relying on a license as comparable.**</u>

Defendants and Intervenors should not be permitted to reference any of their own patents or any claim charts thereto. It is black-letter law that "[t]he existence of one's own patent does not constitute a defense to infringement of someone else's patent." *Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996). And permitting Defendants and Intervenors to reference their patents and claim charts "would [] inject[] frolics and detours and would [] require[] introduction of counterevidence, all likely to create side issues that would [] unduly distract[] the jury from the main issues." *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1572-73 (Fed. Cir. 1986). All Defendants/Intervenors could hope to accomplish by referencing their other patents and claim charts is to distract from the real issue to be tried: whether Defendants' accused products infringe the asserted patent.

Yet Defendants plan to introduce at least 31 Ericsson patents at trial. T-DX67 (patent compilation).[1] Further, Defendants plan to show the jury claim charts mapping those Ericsson

---

[1] This 31-document patent complication (T-DX67) should also be excluded because it violates the Court's Standing Order prohibiting such multi-document compilations ("Parties are not permitted to compile multiple documents and present them to the Court as a single 'exhibit.'").

████████████████████████████████████

patents to the 5G standards—even going so far as to present a "Rule 1006 Summary of Ericsson 5G Claim Charts Relevant to Cellular Infrastructure." T-DX68 (5G claim charts); T-DX66 (FRE 1006 Summary).[2] One obvious inference that Defendants/Intervenors hope the jury will draw from this evidence is that, because Defendants/Intervenors have their own 5G patents, they cannot infringe Daingean's asserted patent. That is improper and will just distract the jury. *See Cameco Indus. v. La. Cane Mfg.*, 1995 U.S. Dist. LEXIS 11294, at *16 (E.D. La. July 27, 1995) ("admission of [defendant's] patent or patent application . . . is likely to give the jury the false impression that a patent on the accused machine means that it is substantially different from the machine claimed in plaintiff's patent . . . [and] would be only distracting and confusing to the jury, while providing little, if any, relevant information.").

Courts in this District have repeatedly entered orders to this effect. *See*, *e.g.*, *Lionra Techs. Ltd. v. Fortinet, Inc.*, Case No. 2:22-cv-322-JRG-RSP, Dkt. No. 509 at 2 (Plaintiff's MIL No. 3) (E.D. Tex. May 7, 2024) (granting motion to exclude "technical details of defendants' patents, including how they relate to the Accused Products); *Solas OLED Ltd. v. Samsung Elecs. Co. Ltd.*, Case No. 2:21-cv-105-JRG-RSP, Dkt. No. 308 at 1-2 (Plaintiff's MIL No. 1) (E.D. Tex. May 24, 2022) (granting in part motion to "exclude evidence and argument based on [defendants'] patents"); *Barkan Wireless IP Holdings L.P., v. T-Mobile US, Inc. et al*, Case No. 2:21-cv-34-JRG-RSP, Dkt. No. 227 at 8 (Plaintiff's MIL No. 8) (E.D. Tex. Dec. 16, 2021) (granting in part "Motion to exclude Defendants' patents" by excluding "any argument that ownership of a patent is a defense to infringement"); *Kaist IP US LLC v. Samsung Electronics Co., Ltd., et al.*, Case No. 2:16-cv-1314-JRG-RSP, Dkt. No. 416 at 2 (Plaintiff's MIL No. 8) (E.D. Tex. May 3, 2018)

---

[2] These multi-document complications (T-DX68 and T-DX55) should also be excluded for violating the Court's Standing Order regarding multiple document exhibits.

██████████████████████████████████████████

(granting MIL seeking to exclude evidence or argument "[t]hat the Accused Instrumentalities practice other patents"); *Simple Air, Inc. v. Google Inc. et al*, Case No. 2:11-cv-416-JRG, Dkt. No. 571 at 5 (Plaintiff's MIL No. 6) (E.D. Tex. Jan. 8, 2014) (granting MIL to exclude "evidence or argument by [Defendant] that its accused instrumentalities practice the claims of any of [Defendant's] own patents").

In response, Defendants will likely argue that the Ericsson 5G patents are relevant to damages issues. Defendants' expert, Ms. Bennis, opines that damages should be ████████ ████████████████████████████████████████████████████████ and that Ericsson alone ████████████████████████████████████████████████████████████████████ ██████████████████████████." Ex. 7, Bennis Report at ¶285. So, in her view, Daingean's damages are ████████████████████████████████████████████████████████ ███

However, this is just the sort of royalty stacking argument that the Federal Circuit has found unreliable. *Commonwealth Sci. and Indus. Research Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015) ("abstract recitations of royalty stacking theory, and qualitative testimony that an invention is valuable—without being anchored to a quantitative market valuation—are insufficiently reliable."). Ms. Bennis's analysis is unreliable because it improperly assumes that the Nokia, Ericsson, and estimated number of essential patents are equally valuable and also happen to be worth enough to make Mr. Dell's royalty "untenable." Ms. Bennis never considers whether AT&T actually practices all of the estimated number of essential patents, a key consideration in whether the royalties would be untenable to AT&T. Ex. 8, Bennis Dep. Tr. 171:22-172:11. Instead, she relies on an unsupportable assumption that any patent that is essential would be infringed by anyone who practiced the standard. *Id.*, Tr. 172:13-173:5. A reliable

7

methodology would try to value the royalty for each patent based on its own contribution and determine what percentage of the patents were in fact practiced by AT&T.

Daingean filed a motion to strike this testimony from Ms. Bennis. Dkt. No. 196. Defendants should not be permitted to side-step a positive ruling on that motion by having other witnesses use the same evidence to offer similar royalty stacking opinions. Defendants should not be permitted to reference a specific patent or claim chart unless it is relied upon by a damages expert as a technically comparable patent.

Because Defendants/Intervenors' patents are not relevant to any issue to be tried and can therefore serve only an improper purpose, the Court should enter an order barring any evidence, argument, or testimony regarding such patents.[3]

**3.    <u>Evidence, testimony, or argument that the '803 Patent is essential to any standard, including the 5G Standard.</u>**

Defendants should be precluded from offering any evidence, testimony, or argument regarding the essentiality of the '803 Patent.  "In this case it is Defendants' burden to prove essentiality, should they choose to do so, because they are the only party in any way asserting that the patents are essential."  *Wireless Alliance, LLC v. AT&T Mobility LLC*, No. 2:23-CV-0095-RWS-RSP, Dkt. No. 251 at 3 (E.D. Tex. Oct. 28, 2024).  Defendants admit that "determinations of actual essentiality . . . are properly the subject of expert opinion."  Ex. 9 (Nokia Third Supplemental Objections and Responses to First Individual Interrogatories) at 9.  But Defendants' expert reports contain no opinions whatsoever regarding the essentiality of the '803 Patent.

---

[3] To be sure, Daingean agrees that Defendants may introduce the general fact that they have patents. This motion seeks, *inter alia*, to preclude Defendants from introducing technical details of those patents, discussing how those patents relate to or cover any part of their respective accused products, or using those patents to advance a general royalty stacking framework.

Because they lack any proper evidence, Defendants should not be allowed to offer any evidence, testimony, or argument regarding the essentiality of the '803 Patent.

### 4. Expert testimony regarding Defendants' exhaustion defense.

The Court should exclude any expert testimony from Defendants' experts regarding their exhaustion defense because no expert opined on exhaustion in any expert report. Defendants served numerous expert reports in this case, but none of them addressed exhaustion, which requires showing an authorized sale of a product that has no reasonable non-infringing use and includes all inventive aspects of the patent. *See Quanta Comp., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 638 (2008). Despite arguing to this Court that the preamble of claim 12 of the '803 Patent is limiting, and thus requires mobile subscriber stations, ███████████████████████████

███████████████████████████████████████. *See* Dkt. No. 203 at 1

(███████████████████████████████████████████

███████████").

However, Defendants (including Nokia) have failed to present any expert testimony to support their burden of proof regarding their exhaustion affirmative defenses. *See* Dkt. No. 112 at 14 (AT&T exhaustion defense); Dkt. No. 113 at 21 (Ericsson exhaustion defense); Dkt. No. 114 at 20 (Nokia exhaustion defense). To carry that burden requires proving that the product has no reasonable non-infringing use and includes all inventive aspects of the patent. *See Quanta Comp., Inc.*, 553 U.S. at 638. None of Defendants' experts have addressed "inventive aspects" of the '803 Patent or whether such inventive aspects are included in the accused base stations. Furthermore, Defendants' technical expert (Dr. van der Weide) has opined that █████████████████

████████████████████████████████████████████

███████████" Ex. 10, Van der Weide Report ¶244. As another example, Dr. van der Weide opines that "██████████████████████████████████████████. *Id.,*

¶246. Finally, Defendants' expert opines that AT&T's use of the accused base stations is not infringing. *See* Ex. 11, Van der Weide Rebuttal § X.

To support its request for summary judgment of exhaustion, Nokia simply asserts that "[u]nder Daingean's infringement theory, the base stations that Nokia sells to AT&T substantially embody the elements of claim 12 of the '803 patent, which claims a base station." Dkt. No. 203 at 11. And rather than carry its burden of proof, Nokia attempts to flip that burden on Daingean. *See* Dkt. No. 274 at 4 ("Daingean's expert identifies no claim limitation—much less an inventive feature—not allegedly performed by the accused Nokia base station."). Nokia's lack of evidence regarding exhaustion is apparent in its summary judgment motion, which fails to cite any testimony from its own experts to support its exhaustion defense. Nokia (and Defendants) should not be allowed to present expert testimony from its experts at trial to support their exhaustion defenses. *See* Standing Order MIL #23.

### 5.    <u>Evidence, testimony, or argument regarding or suggesting that Daingean was legally obligated to provide pre-suit notice.</u>

The Court should not permit any evidence, testimony, or argument regarding whether Daingean was legally obligated to provide pre-suit notice to Defendants of their infringement of the '803 Patent. To be clear, the *limine* that Daingean seeks here would not bar Defendants' ability to show that the lawsuit was their first notice of infringement.

This Court recently granted an identical *limine* in *Lionra Techs. Ltd. v. Fortinet, Inc.*, Case No. 2:22-cv-00322-JRG-RSP, Dkt. No. 509 at 2 (E.D. Tex. May 7, 2024) (ruling that Plaintiff's MIL No. 2, "Evidence, Testimony, or Argument Regarding Pre-suit Notice," "is GRANTED to the extent Defendants may not suggest Plaintiff was legally obligated to provide pre-suit notice, but does not bar Defendants' ability to show that the lawsuit was their first notice of infringement").

10

████████████████████████████████████████████

Here, Defendants' counsel have specifically asked Daingean's witnesses why Daingean did not reach out to the Defendants prior to filing suit to provide notice. *See, e.g.*, Ex. 1, Padian Dep. Tr. 18:2-19:19 ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

Pointing out that Daingean did not first notify Defendants before filing this lawsuit serves only to unfairly prejudice Daingean because it incorrectly suggests that Daingean **should** have given notice prior to filing suit. Moreover, were the issue to be permitted, Daingean would have little ability to meaningfully respond, without further delving into irrelevant issues about why a patent owner might not provide notice, such as the risks of declaratory judgment filings and IPRs, the unlikelihood that pre-suit notice would lead to reasonable negotiations, or other similar responses—all of which would be solely to respond to Defendants' pre-suit notice discussion, and none of which bears on the issues the jury needs to decide.

Simply put, whether Daingean provided pre-suit notice to any of the Defendants is not relevant to any issue to be decided at trial. Allowing Defendants to inject that issue into the case would risk unfair prejudice and confusion. As such, Daingean seeks a *limine* barring any evidence or argument related to whether Daingean was legally obligated to provide pre-suit notice to Defendants of their infringement of the '803 Patent, with the clarification that such *limine* would not bar Defendants' ability to show that the lawsuit was their first notice of infringement.

11

█████████████████████████████

Dated:  November 12, 2024

Respectfully submitted,

/s/  Amir H. Alavi
Amir H. Alavi
Texas Bar No. 00793239
aalavi@aatriallaw.com
Demetrios Anaipakos
Texas Bar No. 00793258
danaipakos@aatriallaw.com
Michael McBride
Texas Bar No. 24065700
mmcbride@aatriallaw.com
Scott W. Clark
Texas Bar No. 24007003
sclark@aatriallaw.com
Connie Flores Jones
Texas Bar No. 00793736
cfloresjones@aatriallaw.com
Masood Anjom
Texas Bar No. 24055107
manjom@aatriallaw.com
C. Ryan Pinckney
Texas Bar No. 24067819
rpinckney@aatriallaw.com
ALAVI & ANAIPAKOS PLLC
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 751-2362
Facsimile:  (713) 751-2341

Michael Heim
Texas Bar No. 09380923
mheim@hpcllp.com
Eric Enger
Texas Bar No. 24045833
eenger@hpcllp.com
R. Allan Bullwinkel
Texas Bar No. 24064327
abullwinkel@hpcllp.com
Alden Harris
Texas Bar No. 24083138
aharris@hpcllp.com
Blaine Larson
Texas Bar No. 24083360
blarson@hpcllp.com
Michael B. Dunbar

12

Texas Bar No. 24125213
mdunbar@hpcllp.com
HEIM PAYNE & CHORUSH LLP
609 Main Street, Suite 3200
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile:  (713) 221-2021

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
Charles Everingham IV
Texas Bar No. 00787447
chad@millerfairhenry.com
MILLER FAIR HENRY PLLC
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile:  (903) 757-2323

*Counsel for Plaintiff Daingean Technologies Ltd.*

## CERTIFICATE OF CONFERENCE

This is to certify that counsel for Daingean has complied with LR CV-7(h) and counsel for Defendants and Intervenors have indicated that the Motion is opposed. Counsel for Daingean conferred with counsel for Defendants and Intervenors, on November 12, 2024 by telephone. The parties were unable to reach an agreement on the issues raised in the Motion and it is therefore opposed. The parties have therefore reached an impasse and request resolution of this dispute by the Court.

*/s/ Amir H. Alavi* _____
Amir H. Alavi

13

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on November 12, 2024, a copy of the foregoing was served electronically through the U.S. District Court, Eastern District of Texas ECF system to all counsel of record who are Filing Users of the Court's Electronic Filing System.

*/s/ Amir H. Alavi*
Amir H. Alavi