IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DAINGEAN TECHNOLOGIES LTD. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 2:23-CV-00123-JRG-RSP |
| v. | § | |
| | § | |
| AT&T CORP., AT&T MOBILITY LLC, AT&T MOBILITY II LLC, and AT&T SERVICES INC. | § | JURY TRIAL DEMANDED |
| | § | |
| *Defendants*, | § | |
| | § | |
| ERICSSON INC. and NOKIA OF AMERICA CORPORATION | § | |
| | § | |
| *Intervenors*. | § | |

**DAINGEAN'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE #2: *DAUBERT* MOTION TO EXCLUDE DAMAGES EXPERT OPINIONS OF STEPHEN E. DELL (Dkt. 198)[1]**

---

[1] Daingean objects to Defendants' repeated use of single-space bullet points to make substantive arguments, which is effectively an end-run around the page limits set forth in Local Rule CV-7, which is 5-pages for reply briefs. *See* Dkt. 276 at 1, 2 and 5. Defendants also used this approach in their opening *Daubert* motion. Dkt. 198 at 1, 2 and 5.

### A. Mr. Dell's Incremental Benefits Model Properly Apportions AT&T's Customer Revenue, Non-Network Benefits and Other 5G Technology.

Mr. Dell's damages analysis does not implicate the EMVR because he conducts multiple analyses supported by "technical opinions to calculate apportionment factors for incremental value." *Wireless Alliance*, No. 2:23-cv-95-RWS-RSP, Dkt. 245 at 3. Thus, it is not impermissible to use AT&T's customer revenue as a starting point because Mr. Dell properly apportions the revenue—repeatedly—to account for the incremental benefit attributable to the '803 Patent. *GREE, Inc. v. Supercell Oy*, No. 2:19-cv-70-JRG-RSP, 2020 WL 4057640, at *7 (E.D. Tex. Jul. 20, 2020) (EMVR inapplicable where expert began with **gross revenue** of the accused products and "conducted an apportionment analysis"); *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-1015-JRG-RSP, 2017 WL 2536962, at *5-6 (E.D. Tex. May 18, 2017) (expert does not invoke EMVR where "apportioning out the amount inherent in the price attributed to the value of the patented features."). Defendants ignore Mr. Dell's incremental benefits model, use a SSPPU that **he did not adopt** (Dkt. 238 at 3-4), and then misconstrue a host of cases to create a rule that does not exist.

Defendants cite no authority for their sweeping proposition that incremental benefits can only be established by relying on comparable licenses. *See* Dkt. 276 at 1. Despite Defendants' assertions ("In *Genband* ... the expert relied on comparable licenses"), **nowhere** does *Genband* state that the challenged opinion "relied on comparable licenses," much less create a rule limiting incremental benefits to comparable licenses. *Genband,* 2016 WL 125503, at 5. Nor do Defendants provide a cite for their proposition, because they cannot: the court's holding is on "all-fours" with Mr. Dell's analysis, which "reflects an attempt to **directly** calculate the 'incremental benefit' … over the 'next-best' noninfringing alternative." *Id.* (emphasis added). In *Arigna*, the challenged expert opinion also used a second, "reasonableness check," that **did not** rely on comparability of the licenses to apportion, which the court found to be "sufficiently reasonable and rooted in the

1

facts of the case." *Arigna,* No. 2:22-cv-126, Dkt. 321, at 9-10. In *Wireless Alliance*, apportionment was not limited to a comparable license analysis, as it employed a multi-prong methodology supported, as here, by "technical opinions to calculate apportionment factors for the incremental value provided by the infringing features over non-infringing features." *Wireless Alliance,* Dkt. 245 at 3. And in *GREE*, the expert relied on survey evidence "to calculate the appropriate royalty." *GREE*, 2020 WL 4057640, at *1. To the extent Defendants have factual disagreements with Mr. Dell's apportionment, those are for cross-examination, not exclusion. *Correct Transmission, LLC v. Nokia of Am. Corp.*, No. 2:22-cv-000343-JRG-RSP, 2024 WL 1289784, at *3 (E.D. Tex. March 26, 2024) ("There is no perfect apportionment … any concern [] is best addressed on cross-examination.").[2]

Defendants criticize Daingean's experts because they all agree that "the '803 patent is only valuable in some places, some times, and in only part of the 5G network using certain bands." Dkt. 276 at 2. But this criticism ***confirms*** that Daingean's experts have performed the necessary apportionments. *Wireless Alliance,* Dkt. 245 at 3. Finally, because Mr. Dell's incremental benefits model apportions solely for the benefits the '803 Patent provides to AT&T and its customers, it necessarily apportions for other "products/services other than 5G data traffic or voice," whether they are free or not. *See* Dkt. 276 at 2 (Section I.B). For this same reason, he also apportions for "other, non-'803 patented technology used the 5G network." *Id*. at 4 (Section I.E). In sum, the criticisms lodged by Defendants in Sections I.A, I.B and I.E are all irrelevant because they ignore the fundamental purpose of Mr. Dell's incremental benefits model which apportions for all of it.

---

[2] Despite Defendants' assertions (Dkt. 276 at 1), Mr. Delgado testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 11 at 57:4-13. And Defendants cannot seriously contend that "the parties produced all their licenses," Dkt. 276 at 1, fn. 1, such that Daingean could test the veracity of this sweeping assertion.

2

**B.    Mr. Dell's ▮▮▮ Technical Apportionment is Conservative and Limited to the Portions of AT&T's 5G Network Where the Benefits Are Realized.**

Defendants' economic criticisms of Mr. Dell's reliance on Dr. Kowalski's technical opinion miss the mark. ***First***, if anything, Dr. Kowalski's ▮▮▮ incremental benefit is "***conservative***, when compared to Ericsson's own documents" showing ▮▮▮ ▮▮▮ ▮▮▮ Ex. 1, ¶287 (emphasis added); Ex. 20, Kowalski Report, §VI.B. ***Second***, despite Defendants suggestion to the contrary (Dkt. 276 at 2), Mr. Dell does not apply this conservative, ▮▮▮ incremental benefit directly to the infringing revenue on a one-for-one basis, rather, it is limited to the conditions where the "peak benefits" of the '803 Patent are achieved, i.e., "data traffic and network volume during peak times of the day." Ex. 1, Dell Report, ¶288. ***Third***, if the increase in spectral efficiency had been substantially greater, it would have led to a different set of conditions at the hypothetical negotiation, favoring the ***licensor***. But that ***hypothetical*** is neither the technical benefit of the '803 Patent, nor Mr. Dell's opinion.

**C.    Mr. Dell Properly Employs 14.9% as a Proxy to Adjust for Peak Data Traffic.**

Defendants argue that Mr. Dell's "peak data traffic" adjustment must be excluded because he uses automobile traffic as a proxy for 5G cellular data traffic on AT&T's network (Dkt. 276 at 3-4), but they never explain why NHTSA data is unreliable (it is not), why it is unreliable as a proxy for peak data traffic (again, it is not), or why ▮▮▮ ▮▮▮ Despite Defendants arguments (Dkt. 276 at 3), Mr. Dell does provide a connection between automobile and peak data traffic; specifically, he opines that, like peak data traffic, peak cellular traffic occurs in busy urban centers or along busy traffic corridors. Ex 1, ¶¶288-289; Ex. 7 at 94:12-19 and 95:19-96:7. Defendants are also wrong to suggest that Daingean never requested AT&T's peak traffic data (Dkt. 276 at 4, fn.

3

3), because that's exactly what Daingean did. *See* Ex. 21, June 14, 2024 Clark Email, Category No. 6(a) ("Documents (including data and specifications) regarding: a) Expected or target connection statistics (e.g., users, throughputs) for urban/suburban deployed points of presence ('POPs') on AT&T/TMO's respective 5G Network."). And unable to explain away the specific statements from Ericsson's own website, Defendants parrot the same argument from their opening motion as if the inconvenient evidence did not exist.

### D. Mr. Dell's Incremental Profit Split Using AT&T's Published ROIC is Reliable.

Defendants completely ignore the court's reasoning in *WAPP*, and then argue that ROIC is flawed because Mitsubishi would have had a lower ROIC than AT&T at the hypothetical negotiation.[3] *See* Dkt. 276 at 4-5. But as the licensee, it is ***AT&T's*** apportioned incremental profits—not Mitsubishi's—that would have been at issue during the hypothetical negotiation. Mitsubishi's ROIC is not relevant. And although ROIC does fluctuate (and may even turn negative), that does not mean that it would not be a useful metric where, as here, AT&T's overall average ROIC in 2022 was 11.62%, corresponding to hypothetical negotiation date. Indeed, it is for this very reason that the *WAPP* court found ROIC to be sufficiently tied to the facts of the case, i.e., as "a financial calculation that fluctuates and is therefore a different figure for each defendant at any given timepoint," thereby making it "rational to opine that [the licensee] … would agree to their customary rate of return when they make investments of capital in technology or otherwise." *WAPP*, at 10-11. Although no profit split metric is perfect, Defendants' criticisms of ROIC "go to the weight of [Mr. Dell's] testimony, not admissibility." *Id*.

---

[3] The *WAPP* order (Ex. 16) was filed as a redacted exhibit in another, in-district case, *Garrity Power v. Samsung*, No. 2:20-cv-00269-JRG, Dkt. 158 (E.D. Tex. Oct. 13, 2021), in response to the same type of ROIC *Daubert* challenge (*id*., §II.C), which the court denied. *Id.*, Dkt. 226 (E.D. Tex. Dec. 10, 2021) (denying ROIC *Daubert* challenge because it "could be addressed by vigorous cross examination" and because such arguments "go to the weight … such that exclusion is improper.")

4

### E. Defendants' Laundry List of Exclusions Should be Rejected.

The Court should reject Defendants' scatter shot list of arguments requesting various exclusions (Dkt. 276 at 5), none of which substantively respond to the evidence and testimony Daingean presented in its opposition.[4] AT&T's revenue and other financials are directly relevant to damages because Mr. Dell's incremental benefits damages model directly ties this evidence to the Accused Products (i.e., AT&T network and cellular services) and the *Georgia-Pacific* reasonable royalty framework itself. AT&T's spectrum costs are also relevant, as Dr. Kowalski explains, "[n]ot using the method of the '803 Patent will impair spectral efficiency, which in turn will impair user throughput as well as cell throughput." Ex. 20, ¶35. Mr. Dell does not rely on the Ericsson licenses merely for form, but also under *GP* Factor 12, because they provide "a range of reasonable royalty rates and/or royalty payments for patents relevant to cellular technologies that include patents considered to be comparable to the '803 Patent." Ex. 1, ¶¶281 and 249-257. Regarding the Ericsson Presentations, both are relevant to damages under *GP* Factor 12 as "indications as to the value Ericsson, and the overall industry, places on Ericsson's 5G patent portfolio," *id.*, ¶282, and Defendants still offer no authority for their exclusion. And regarding the growth of AT&T's 5G networks, Mr. Dell (and Dr. Kowalski) offer ample evidence to show that increased spectral efficiency provides AT&T (and its customers) more efficient use of available 5G spectrum, increased data rates, improved "edge of cell" performance, and interference reduction, which is accretive to AT&T. *See id.*, ¶¶51-55, 208-209, 218, 222, 226, 230, 231, 234, 238-239; Ex. 14 at 28 (cited in Ex. 1, ¶51).

Accordingly, Defendants' Motion to Strike should be denied.

---

[4] Daingean further objects to Defendants' use of single-space bullet points to make substantive arguments in this section, which is particularly egregious here, and in contravention of the page limits set forth in in Local Rule CV-7.

| | |
|---|---|
| Dated:  November 14, 2024 | Respectfully submitted, |
| | /s/  *Amir H. Alavi* |
| | Amir H. Alavi |
| | Texas Bar No. 00793239 |
| | aalavi@aatriallaw.com |
| | Demetrios Anaipakos |
| | Texas Bar No. 00793258 |
| | danaipakos@aatriallaw.com |
| | Michael McBride |
| | Texas Bar No. 24065700 |
| | mmcbride@aatriallaw.com |
| | Scott W. Clark |
| | Texas Bar No. 24007003 |
| | sclark@aatriallaw.com |
| | Connie Flores Jones |
| | Texas Bar No. 00793736 |
| | cfloresjones@aatriallaw.com |
| | Masood Anjom |
| | Texas Bar No. 24055107 |
| | manjom@aatriallaw.com |
| | C. Ryan Pinckney |
| | Texas Bar No. 24067819 |
| | rpinckney@aatriallaw.com |
| | ALAVI & ANAIPAKOS PLLC |
| | 609 Main Street, Suite 3200 |
| | Houston, Texas 77002 |
| | Telephone: (713) 751-2362 |
| | Facsimile:  (713) 751-2341 |
| | |
| | Michael Heim |
| | Texas Bar No. 09380923 |
| | mheim@hpcllp.com |
| | Eric Enger |
| | Texas Bar No. 24045833 |
| | eenger@hpcllp.com |
| | R. Allan Bullwinkel |
| | Texas Bar No. 24064327 |
| | abullwinkel@hpcllp.com |
| | Alden Harris |
| | Texas Bar No. 24083138 |
| | aharris@hpcllp.com |
| | Blaine Larson |
| | Texas Bar No. 24083360 |
| | blarson@hpcllp.com |
| | Michael B. Dunbar |

      Texas Bar No. 24125213
      mdunbar@hpcllp.com
      HEIM PAYNE & CHORUSH LLP
      609 Main Street, Suite 3200
      Houston, Texas 77002
      Telephone: (713) 221-2000
      Facsimile:  (713) 221-2021

      Andrea L. Fair
      Texas Bar No. 24078488
      andrea@millerfairhenry.com
      Charles Everingham IV
      Texas Bar No. 00787447
      chad@millerfairhenry.com
      MILLER FAIR HENRY PLLC
      1507 Bill Owens Pkwy
      Longview, Texas 75604
      Telephone: (903) 757-6400
      Facsimile:  (903) 757-2323

      *Counsel for Plaintiff Daingean Technologies Ltd.*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on November 14, 2024, a copy of the foregoing was served electronically through the U.S. District Court, Eastern District of Texas ECF system to all counsel of record whom are Filing Users of the Court's Electronic Filing System.

      */s/ Amir H. Alavi*
      Amir H. Alavi