# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| DAINGEAN TECHNOLOGIES LTD., | § |
| | § |
| *Plaintiff*, | § |
| | § |
| v. | § CIVIL ACTION NO. 2:23-CV-00123-JRG-RSP |
| | § |
| AT&T INC., AT&T CORP., AT&T COMMUNICATIONS LLC, AT&T MOBILITY LLC, AT&T MOBILITY II LLC, and AT&T SERVICES INC., | § § § § |
| | § |
| *Defendants*, | § |
| | § |
| ERICSSON INC. and NOKIA OF AMERICA CORP., | § § |
| | § |
| *Intervenors*. | § |

## MEMORANDUM ORDER

Before the Court is Defendants' Motion to Enforce Mandatory Forum-Selection Clause (**Dkt. No. 207**) and Defendants' Supplement to the Motion (**Dkt. No. 392**). For the reasons set forth below, the Court **DENIES** the Motions.

### I.    BACKGROUND

Due to the somewhat complex background of many of the relevant items in this Motion, a brief overview is in order.

#### A.  The Relevant Parties

Daingean Technologies Ltd. is one component of a complex corporate structure. Specifically, it is a subsidiary company related to Atlantic IP Services Ltd. ("AIP Ltd"), an Irish company, and the similarly named Atlantic IP Services LLC ("AIP LLC"), a U.S. company, both

of which provide back-end support to Daingean and other Atlantic IP subsidiaries in their monetization efforts. Dkt. No. 392-11; Dkt. No. 401 at 2 n.2. Arigna is another such company and is a sister organization to Daingean. Dkt. No. 392-11 at 39-40

Tangentially related to the dispute are Mitsubishi Electric Corporation and one of its subsidiaries. *See* Dkt. No. 240-5; *see also* Dkt. No. 392-16.

### B. Chain of Title of the Patent at Issue

At issue in the instant Motion is U.S. Patent No. 8,576,803. The original assignee of the '803 Patent was Mitsubishi Electric Corporation. Dkt. No. 1-2. Due to an unrelated dispute between Mitsubishi and Arigna, the parties there agreed to a settlement wherein Mitsubishi would assign, *inter alia*, the '803 Patent to Daingean. Dkt. No. 240-5 (the "Patent Assignment Agreement" or "PAA"); Dkt. No. 392-16 (the "Settlement and Patent Transfer Agreement" or "SPTA").

### C. Agreements and Transactions Between the Relevant Parties

In 2022, AIP Ltd signed an agreement with Samsung Electronics Co, Ltd. (the "AIP Ltd-Samsung License"), licensing several patent families to the latter. Dkt. No. 207-4. Also at issue are 2022 agreements between Arigna and Samsung (the "Arigna-Samsung License") (Dkt. No. 392-13) and between AIP LLC and Samsung (the "AIP LLC-Samsung License") (Dkt. No. 392-8).

Samsung manufactures and sells articles (base stations) to Defendants that Daingean now accuses of infringing the '803 Patent, but Plaintiff and Defendants dispute whether the above agreements cover the '803 Patent, and therefore whether Defendants are covered by the licenses as well.

### D. Procedural History

On March 24, 2023 Plaintiff filed suit against several parties for patent infringement. Dkt. No. 1. On May 7, 2024 Plaintiff filed its Second Amended Complaint. Dkt. No. 111. In it, Plaintiff alleges that Defendants infringe the '803 Patent. *Id.* at 3.

On October 21, 2024 Defendants filed their initial Motion to Transfer Venue, arguing that the AIP Ltd-Samsung License requires this dispute to be transferred to New York under the agreement's forum selection clause. Dkt. No. 207 at 2.

At the December 3, 2024 Pretrial Hearing, the Court heard arguments from both Parties concerning the initial Motion to Transfer. *See generally* Dkt. No. 368; *see also* Dkt. No. 369. The Court ultimately decided to order a limited re-opening of discovery relating to the Motion to Transfer. *See* Dkt. No. 348.

During this discovery, Defendants filed a Supplement to their Motion on January 29, 2025, arguing that the Arigna-Samsung License and AIP LLC-Samsung License also require this dispute to be transferred to New York under the related forum selection clauses. Dkt. No. 392 at 4-5. Briefing on both Motions are now complete.[1]

## II. LEGAL STANDARDS

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A case may also be transferred under § 1404(a) if

---

[1] As to the initial Motion to Transfer:
After AT&T filed the initial Motion on October 21, 2024, Daingean responded on November 4, 2024. Dkt. No. 254. AT&T then replied on November 11, 2024. Dkt. No. 289. Daingean filed their sur-reply on November 18, 2024. Dkt. No. 323.

As to the Supplement to the Motion to Transfer:
After AT&T filed the Supplement on January 31, 2025, Daingean responded on February 10, 2025. Dkt. No. 401. AT&T then replied on February 13, 2025. Dkt. No. 402. Daingean filed their sur-reply on February 16, 2025. Dkt. No. 408.

there is an applicable forum selection clause. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 52 (2013). If a party files such a motion, then "proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id*. To determine whether transfer pursuant to a forum-selection clause is appropriate, courts follow a two-step analysis.

The court first determines if the forum selection clause governs the dispute. *See Gen. Protecth Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011). In patent cases, the applicability of a forum selection clause often arises when a defendant asserts a defense based on a license agreement. *See, e.g., Zix Corp. v. Echoworx Corp.*, No. 2:15-cv-01272-JRG, 2016 WL 7042221 (E.D. Tex. June 9, 2016). The Federal Circuit has held that a forum selection clause applies if the nexus between the case and the agreement at issue is "non-frivolous." *Gen. Protecth Grp*, 651 F.3d at 1359. A bare allegation that a license provides a defense to the claims in suit fails to meet this standard and will not trigger a forum selection clause. *Id*. Beyond this, however, the Federal Circuit has provided little guidance. Previously, this Court has used a less than one-half and nearer to the one-quarter standard when addressing the non-frivolousness threshold regarding forum selection clauses under § 1404(a). *See Zix*, 2016 WL 7042221 at *3. In *Zix*, this Court examined the continuum existing between a wholly frivolous assertion of a license defense and a conclusive showing of success on the merits to find the "attachment point" at which the asserted defense becomes "non-frivolous." *Id*. This Court concluded that the elusive attachment point is "almost assuredly . . . found before we reach the mid-point of the spectrum," and that it is probably "found nearer the one-quarter marker." *Id*.

4

### III. ANALYSIS

#### A. The AIP Ltd-Samsung License

Defendants' Motion to Transfer Venue under the forum selection clause of the AIP Ltd-Samsung License is legally frivolous. For the AIP Ltd-Samsung License's forum selection clause to apply to the '803 Patent, it would require that the '803 Patent be licensed to Samsung. This, in turn, would require the '803 Patent to be a "Patent," as defined in the License: "any and all patents and patent applications that are directly or indirectly owned, controlled, licensable or in any way enforceable as of the Effective Date . . . by any entity that . . . meets the definition of AIP Affiliates . . . ." Dkt. No. 207-4 at 3. As discussed below, Defendants fail to show that their argument that the '803 Patent meets this definition is non-frivolous.

#### 1. Daingean and Arigna Had No Control Over the '803 Patent

Defendants first argue that the '803 Patent is a "Patent" because Daingean and Arigna are "AIP Affiliates" who had direct or indirect control over the '803 Patent as of the Effective Date. Dkt. No. 207 at 7.

"Affiliates" is a defined term in the contract, which in relevant part states: "[AIP] Affiliate(s) [means] . . . any and all Entities in which AIP, *as of the Effective Date* (i) owns . . . or (ii) has the power to, directly or indirectly, direct . . . ." Dkt. No. 207-4 at 1 (emphasis added).

"Effective Date" is, in turn, defined as taking place on the "Closing." *Id.* at 4. Closing occurred on August 8, 2022. Dkt. No. 204-2 at 1. Thus, the Effective Date of the contract is August 8, 2022.

##### a. Daingean Is Not an AIP Ltd Affiliate

Daingean submitted its application to incorporate on August 10, 2022. Dkt. No. 240-3 at 1. This is after the August 8 Effective Date. Accordingly, Daingean is not an AIP Ltd Affiliate and

could not have had any control over the '803 Patent as of the Effective Date, since it did not exist at that time.

### b. Arigna Had No Control Over the '803 Patent Until After the Effective Date

Defendants then argue that Arigna had direct or indirect control over the '803 Patent before the Effective Date because Mitsubishi had allegedly agreed to assign it to Daingean in May of 2022. Dkt. No. 207 at 7-8. Specifically, they assert that because all material terms were reflected in the proposed May agreement, the contract came into being then. *See* Dkt. No. 368 at 42-43.

They further argue that Plaintiff's expert, Mr. Dell, opined that Mitsubishi was aware that it would ultimately assign the '803 Patent to Daingean since as early as March of 2022. Dkt. No. 207 at 8 (citing Dkt. No. 207-6 at ¶ 121).

Plaintiff does not contest that Arigna was an AIP Ltd Affiliate as of the Effective Date. *See* Dkt. No. 254 at 10-11. However, it counters Defendants' arguments by first pointing out that the supposed May 2022 agreement was not finalized at that point. *Id.* at 10. Defendants' allegations about the May agreement, Plaintiff argues, came from an email chain in which the agreement is even labeled as a "*draft* settlement agreement." *Id.* (quoting Dkt. No. 207-5 at 2 (emphasis added by Plaintiff)). Plaintiff goes on to point out that this unfinalized agreement did not give Arigna any control, direct or indirect, over the '803 Patent because either party could have backed out of the deal up until the date the contract actually came into being. *Id.* Plaintiff then asserts that the contract did not come into being until August 23, 2022, as per the contract's language. *See id.* (citing Dkt. No. 240-5 at 1).

As to Mr. Dell's statements, Plaintiff argues that these were directed towards the timing of a hypothetical negotiation between the parties vis-à-vis damages calculations, and that they are therefore irrelevant to the question of Arigna or Daingean's control. *See id.* at 11.

6

Plaintiff's arguments are correct, at least insofar as Defendants' position not meeting the standard of non-frivolousness. We start with Mr. Dell's statements. The surrounding context of the interrogatory clearly shows that Mr. Dell was, as Plaintiff contends, assessing the timing of damages.[2] There is nothing in his statement showing that Mitsubishi knew that Arigna was ultimately going to accept the settlement that was later proposed in May of that year. Furthermore, even if Mr. Dell did indicate that Arigna was going to accept the deal, it still would not give it any control over the '803 Patent prior to the actual assignment (see below).

We now move to the alleged May agreement. Both parties in the PAA were reasonably sophisticated entities that would have been aware that Daingean had no rights until *after* the assignment occurred.

Even taking Defendants' allegations regarding all material terms being reflected in the proposed agreement as true, Defendants' argument is still unavailing. Courts will sometimes interpret a contract as having come into being when all substantive terms have been agreed to, but only where the contract is silent or otherwise ambiguous on the point of contract formation. The contracting parties are the masters of their agreement; where they decide on a particular point and this is represented in the contract language unambiguously, courts should not do damage to that point of agreement. *See Realtime Data, LLC v. T-Mobile USA, Inc.*, 936 F. Supp. 2d 795, 800 (E.D.

---

[2] The relevant language is:

> Based on my discussions with Dr. Feuerstein, I understand that the infringing features of the Accused Instrumentalities were enabled in or around March 7, 2022 when Ericsson implemented an accused feature into its base stations. As such, it is my opinion that the hypothetical negotiation would occur in or around March 2022. At that time, the '803 Patent was assigned to Mitsubishi. Therefore, I understand that the hypothetical negotiation would occur between Mitsubishi (as licensor) and AT&T (as licensee) in or around March 2022, when AT&T first implemented the Accused Instrumentalities into its 5G network. Moreover, at the time of the hypothetical negotiation, Mitsubishi would have been aware of the fact that it was in negotiations to settle a dispute that would ultimately result in Mitsubishi assigning the '803 Patent to Daingean, such that Mitsubishi would have taken into consideration these factors during the hypothetical negotiation.

Dkt. No. 207-6 at ¶ 121.

Tex. 2013) ("A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties.") (interpreting New York law) (citing *Brad H. v. City of New York*, 17 N.Y.3d 180, 928 N.Y.S.2d 221, 951 N.E.2d 743, 746 (2011)).

Here, the PAA states that "This Patent Assignment Agreement . . . *is made and entered into this August 23, 2023* . . . by and between Mitsubishi Electric Corporation . . . and Daingean Technologies Limited. Dkt. No. 240-5 at 1 (emphasis added). There is no ambiguity in this language. Accordingly, the contract did not come into being until August 23, 2023, which was after the Effective Date in the AIP Ltd-Samsung License. This is bolstered by the fact that the emails Defendants cite to state that there are additional items to be done before the assignment could occur. Dkt. No. 207-5 at 2 ("Because the '703 family is owned by a subsidiary, [Mitsubishi Electric Corporation] would first acquire it from the subsidiary and then assign it to Arigna along with the other four[3] families."). Hence, the parties knew that the contract had not yet formed.

### 2. Daingean's Retained Law Firms Do Not Enforce the '803 Patent

Defendants next argue that the '803 Patent is a "Patent" because Plaintiff's lawyers are supposedly enforcing it, and this triggers section 2.1(d) in the Patent Agreement. Dkt. No. 207 at 7. The relevant contract language reads:

> AIP, on behalf of itself and its Affiliates, jointly and severally represents and warrants (and where applicable, covenants) that as of the Effective Date . . . no law firm . . . has ever, has now, or will ever directly or indirectly own, control, have the right to license or in any way enforce any patents or patent applications . . . .

Dkt. No. 207-4 at 5. Should the above occur, then the contract goes on to say that:

> AIP, on behalf of itself and its Affiliates, hereby agrees that to the extent any such law firm . . . ever directly or indirectly own, control, have the right to license or in

---

[3] The '803 Patent was one of the patents in thes four other patent families.

any way enforce any patents or patent applications on or after the Effective Date, then notwithstanding anything to the contrary, such patents and patent applications *will be deemed Patents*.

*Id.* (emphasis added).

Defendants attempt to construe Plaintiff's retention of legal counsel in the instant suit as the law firms themselves enforcing the '803 Patent. See Dkt. No. 207 at 7. Plaintiff counters by arguing that it is Daingean that is enforcing the '803 Patent (with the help of counsel) and that, furthermore, it is the only one that legally can enforce it. Dkt. No. 254 at 8-9. This is because it holds all substantial rights to the '803 Patent. *Id.* at 9.

Plaintiff is correct: "[o]nly the entity or entities that own or control all substantial rights in a patent can enforce rights controlled by that patent." *IpVenture, Inc. v. Prostar Comp., Inc.*, 503 F.3d 1324, 1325 (Fed. Cir. 2007). Plaintiff's retained law firms have never held any rights to the '803 Patent. *See supra* Section I.B. Therefore, the law firms are not the entity enforcing the '803 Patent under law; Daingean is.

Defendants' argument is further undermined by the term "Affiliates" appearing in the above contract language. As previously discussed, Daingean is not an "Affiliate" because it was formed after the Effective Date. *See supra* Section III.A1.a. If this clause applied to future affiliates, like Daingean, then every patent asserted by such a future affiliate would be a licensed one. This would destroy any meaningful distinction between an "Affiliate" and a future affiliate, which are separate terms in the AIP Ltd-Samsung License. *See* Dkt. No. 207-4 at 2 (defining "Affiliates"); *compare id.* at 9 (defining "future AIP affiliates").

### B. The Arigna-Samsung License

Defendants' Supplement to the Motion to Transfer Venue under the forum selection clause of the Arigna-Samsung License is also legally frivolous. For the Arigna-Samsung License's forum

9

selection clause to apply to the '803 Patent, it would require that the '803 Patent be licensed to Samsung. This, in turn, would require the '803 Patent to be a "Patent," as defined in the License.

"Patent" is defined as "any and all patents and patent applications that are directly or indirectly owned, controlled, licensable or in any way enforceable as of the Effective Date or any time thereafter by Licensor and/or any of its Affiliates . . . ." Dkt. No. 392-13 at 3.

Defendants argue that the '803 Patent meets this definition under the Arigna-Samsung License because Daingean is an "Affiliate" of Arigna, the latter of whom had direct or indirect control over the '803 Patent and, unlike under the AIP Ltd-Samsung License, here it does not matter that this occurred after the Effective Date. Dkt. No. 392 at 7. In support of their argument regarding Arigna's control, they cite to several items.

First, Defendants point to the SPTA between Arigna, Daingean, and Mitsubishi. Specifically, Defendants call out language concerning consideration:

> At Arigna's request, and as consideration for the releases and waivers granted by Arigna herein, the receipt and sufficiency of such consideration being acknowledged by Arigna, [Mitsubishi] hereby irrevocably transfers and assigns to Daingean all right, title and interest in and to the patent families [which includes the '803 Patent] . . . .

*Id.* at 6 (quoting Dkt. No. 392-16 at 2). Second, they point to an email chain in which discussions between Arigna and Mitsubishi had the former direct the latter to assign the '803 Patent to Daingean. *Id.* at 5 (citing Dkt. No. 289-2 at 4). Taken together, Defendants contend that this shows that Arigna had control over the '803 Patent by being able to decide who Mitsubishi would ultimately assign it to. *See id.* at 5-6. Defendants further argue that even Mr. Dell supposedly agreed that Arigna had control over the patent. *Id.* at 6 (quoting Dkt. No. 392-17 at ¶ 133).

Plaintiff counters by arguing that "Affiliates" is a defined term in the contract, which in relevant part states:

10

> Affiliate(s) [means] . . . any and all Entities that are Controlled by the Licensor, now or in the future, and for so long as the Control exists. For the avoidance of doubt, "Affiliate(s)" of Licensor shall not include any Entities that Control or are under common Control with Licensor (except to the extent such Entities are also Controlled by Licensor).

Dkt. No. 401 at 9-10 (quoting Dkt. No. 392-13 at 1). They go on to point out that "Control" is, in turn, defined as:

> the legal, beneficial, and/or equitable ownership of more than fifty percent (50%) of (i) the voting power representing the right to vote for directors or other managing authority, (ii) equity ownership interest in an Entity, or (iii) other ownership interest in an Entity. In any country where the local law does not permit foreign ownership of more than fifty percent (50%), "Control[led][s]" also includes the right or power to direct the management or policies of an Entity or any ownership or control, directly or indirectly, of the maximum percentage permitted by local law of the outstanding shares or securities entitled to vote for the election of directors or other similar managing authority for such Entity.

*Id.* at 10 (quoting Dkt. No. 392-13 at 2). Plaintiff asserts that Defendants have not produced any proof showing that Daingean was under such "Control" by Arigna. *Id.*

Defendants reply, arguing that the Plaintiff's invocation of the defined term "Control" is a "red herring." Dkt. No. 402 at 3. Defendants contend that the relevant language of the Arigna-Samsung License is in the definition for the term "Patents" which contemplates "'all patents' ever 'indirectly . . . **c**ontrolled'" and that the use of this uncapitalized "controlled" there means that the defined term "Controlled", which is capitalized, does not apply. *Id.* (quoting Dkt. No. 392-13 at 3 (emphasis added by Defendants)). In other words, they assert that there is no need for them to provide evidence of voting power, equity ownership, or the like that "Control" is concerned with. *See id.*

The Court disagrees with Defendants. As a preliminary matter, Defendants omit critical language in their quotation of the Arigna-Samsung License. The full definition for "Patents" is, as stated above, "any and all patents and patent applications that are directly or indirectly owned,

controlled, licensable or in any way enforceable as of the Effective Date or any time thereafter *by Licensor and/or any of its Affiliates . . . .*" Dkt. No. 292-13 at 3 (emphasis added). Accordingly, the plain language of the contract makes clear that the only way the '803 Patent could be a "Patent" is if Daingean was an "Affiliate" of Arigna. As Plaintiff correctly points out, this would require Arigna to exhibit "Control" over Daingean as seen from the definition of "Affiliate" quoted above; mere "control" is not what is at issue here. Defendants have not provided any proof of "Control" such as voting power, ownership, or the like. In point of fact, Defendants even concede that they are not claiming that Daingean is an "Affiliate" of Arigna. Dkt. No. 402 at 5 ("Daingean trumpets that it is not an 'Affiliate' of Aringa . . . under [the license at issue]. *Defendants never claimed it was*.") (emphasis added). This is fatal to Defendants' argument.

### C.  The AIP LLC-Samsung License

Finally, Defendants' Supplement to the Motion to Transfer Venue relying on the forum selection clause of the AIP LLC-Samsung License is legally frivolous as well.

Both Defendants' substantive arguments[4] and the operative language of the AIP LLC-Samsung License mirror that of Section III.B above concerning the Arigna-Samsung License. As before, Defendants ignore critical language in the contract regarding the terms "Patents,"[5]

---

[4] Instead of control over the '803 Patent, Defendants now argue that AIP indirectly licenses it on behalf of Daingean. Dkt. No. 402 at 4. As this is still activity captured in the definition for "Patents" (see footnote 6 below), Defendants' argument is functionally identical to the one they make in the Arigna-Samsung License.

[5] "Patent" is defined as "any and all patents and patent applications that are directly or indirectly owned, controlled, licensable or in any way enforceable as of the Effective Date and/pr for a period of ten (10) years thereafter, *by Covenantor and/or any of its Affiliates . . . .*" Dkt. No. 292-13 at 3 (emphasis added). With respect to the Arigna-Samsung License, the AIP Ltd-Samsung License simply replaces "Licensor" with "Covenantor" in the definition for "Patents." *See* Dkt. No. 392-8 at 3; *compare* Dkt. No. 392-13 at 3.

"Affiliates,"[6] and "Control,"[7] which are essentially identical to the Arigna-Samsung License. *See* Dkt. No. 392 at 8. They also again concede that they are not claiming that Daingean is an "Affiliate" of AIP. Dkt. No. 402 at 5 ("Daingean trumpets that it is not an 'Affiliate' of . . . Atlantic IP under [the license at issue]. *Defendants never claimed it was*.") (emphasis added). Therefore, Defendants' arguments are unsupported by the plain language of the contract at issue.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendants have failed to make a non-frivolous showing that they have a license to the '803 Patent under any of the licenses, and that a forum selection clause, therefore, applies here. Accordingly, the Court **DENIES** Defendants' Motion to Transfer.

**SIGNED this 26th day of February, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[6] In the AIP Ltd-Samsung License:

> Affiliate(s) [means] . . . with respect to the Covenantor, any and all Entities that are Controlled by the Covenantor, now or in the future, and for so long as the Control exists. For the avoidance of doubt, "Affiliate(s)" of Covenantor shall not include any Entities that Control or are under common Control with Covenantor (except to the extent such Entities are also Controlled by Covenantor).

Dkt. No. 392-8 at 1. With respect to the Arigna-Samsung License, the AIP Ltd-Samsung License again simply replaces "Licensor" with "Covenantor" in the definition for "Afilliate(s)." *See* Dkt. No. 392-8 at 1; *compare* Dkt. No. 392-13 at 1.

[7] The definition for "Control" in the AIP Ltd-Samsung License is identical to how it is defined in the Arigna-Samsung License. *See* Dkt. No. 392-8 at 2; *compare* Dkt. No. 392-13 at 2.