IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DAINGEAN TECHNOLOGIES LTD., § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> AT&T INC., AT&T CORP., AT&T § <br> COMMUNICATIONS LLC, AT&T § <br> MOBILITY LLC, AT&T MOBILITY II § <br> LLC, and AT&T SERVICES INC., § <br> § <br> *Defendants*, § <br> § <br> ERICSSON INC. and NOKIA OF § <br> AMERICA CORP., § <br> § <br> *Intervenors*. § | CIVIL ACTION NO. 2:23-CV-00123-JRG-RSP |

**MEMORANDUM ORDER**

Before the Court is Defendants' Motion to Strike #3: *Daubert* Motion to Exclude Expert Opinions of Dr. Kowalski Related to Technical Benefit of the '803 Patent. **Dkt. No. 199.** Dr. Kowalski was "asked to determine and quantify the benefit of implementations that use Claim 12 of the '803 Patent compared to implementations that do not use Claim 12." Dkt. No. 199-3 at ¶ 28.

**I.     LEGAL STANDARD**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed

testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

2

means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II.  ANALYSIS

### A.  Excluded Products

Defendants seek to exclude some of Dr. Kowalski's opinions because he does not exclude from his technical benefits opinion devices or combinations that Daingean does not accuse, for example Apple products (which are licensed). Dkt. No. 199 at 4. Defendants seek a categorical exclusion of any opinion that does not exclusively rely on infringing products.

Plaintiff responds, arguing that its damages expert, Mr. Dell, adjusts his damages analysis to exclude licensed and unaccused products. Dkt. No. 239 at 3. Plaintiff contends that each expert does not need to apportion, so long as the final damages analysis properly apportions. *Id.*

The Court agrees with Plaintiff. The Court finds that after using Dr. Kowalski's inputs Mr. Dell takes steps to apportion out licensed and unaccused products. The Court thus declines to strike Dr. Kowalski's opinions on this basis.

### B.  Relation of Opinions to Alleged Infringement

Defendants next argue that "Dr. Kowalski has not considered or analyzed how the accused products . . . are alleged to infringe, or how that alleged infringement benefits AT&T," and that instead, he "offers the opinion that the '803 patent offers a 22.5-30% improvement over an undisclosed, hypothetical non-infringing system based on simulations he has not even analyzed for infringement." Dkt. No. 199 at 5.

Plaintiff contests this assertion by arguing that Dr. Kowalski's "opening report identifies the specific benefit from this specific technical advance by grounding the analysis in peer reviewed

literature that isolates the difference in cell throughput with and without inter-cell interference" (Dkt. No. 239 at 4 (citing Dkt. No. 199-3 at ¶¶ 29-60)), and that Dr. Kowalski did consider how the accused products infringe and how that infringement benefits AT&T as part of his analysis" (*Id.* at 6 (citing e.g. Dkt. No. 199-3 at ¶ 5)). Plaintiff further argues that "Dr. Kowalski did analyze Claim 12 of the '803 Patent." *Id.* (citing Dkt. No. 199-3 at ¶ 21-22).

The Court finds that Dr. Kowalski has sufficiently tied the sections of his report at issue to the facts of this case. Defendants' further arguments go towards the weight of the evidence, not its admissibility, and are fodder for cross examination.

### C. Methodology A

Next, Defendants seek to strike Dr. Kowalski's analysis under what he calls "Methodology A," because certain sources are allegedly not tied to the accused products or the patented invention. Dkt. No. 199 at 6. Specifically, Defendants take issue with his use of an ITU Report and the 3GPP 5G simulations. *Id.* at 6-8. Defendants also take issue with a 2011 research paper. *Id.* at 12-13. Defendants critique these for not being exactly the same as the accused products in this case. *Id.*

Plaintiff responds that Dr. Kowalski uses these sources to "help the jury better understand the benefit of the '803 patent," and that they were to ensure that his benefits analysis is conservative. Dkt. No. 239 at 10-11.

The Court finds Defendants' arguments unpersuasive. Defendants do not show that these are not sources that an expert in the field would rely upon to understand the benefits of the patent. Industry publications, reports, and scientific papers provide the background knowledge that explains the potential benefits of the patent. Any perceived differences from the background materials can be highlighted through cross-examination and Defendants' evidence.

4

### D. Downlink Measurements

Defendants also criticize Dr. Kowalski's downlink measurements as unreliable and irrelevant. Dkt. No. 199 at 8. They contend that the measurements are irrelevant to Ericsson base stations because they were taken in Vancouver, Washington and AT&T has only deployed Nokia products in that area. *Id.* at 9. They further argue that "AT&T's 5G network predominately uses 5G Non-Stand-Alone (NSA) technology, meaning that every 5G UE on the network first connects to an LTE cell and may then later also be connected to a 5G cell for specific data transactions" but that "Dr. Kowalski performed his measurements in a 5G NSA area, and the screen shots collected by Dr. Kowalski in connection with his opening report show connection to the LTE portion of a 5G NSA network, not to a 5G carrier." *Id.* Thus, "Dr. Kowalski cannot show that he even used 5G in the measurements in his opening report." *Id.* at 9-10. Next, Defendants claim that "Dr. Kowalski takes measurements from random locations that he has not established to be on a cell edge and then compares them against the ITU's minimum performance requirements, then concludes his measurement provides a 'conservative estimate' of 5th percentile user experienced data rate on AT&T's n77 network." *Id.* at 10. Defendants contend that this is "numerical gibberish." *Id.* Finally, Defendants contend that even if Dr. Kowalski's measurements were on the cell edge, they still do not reflect the alleged benefit of the '803 Patent because "Nokia's accused features do not use SRS-based beamforming at the cell edge, and instead fall back to codebook-based beamforming which is not accused." *Id.* at 12.

In response, Plaintiff first argues that "Defendants . . . misunderstand the purpose and nature of Dr. Kowalski's field tests. Defendants [. . .] say that Dr. Kowalski 'concludes his measurement provides a "conservative estimate" of 5th percentile user experienced data rate *on AT&T's n77 network*.' On the contrary, ¶ 42 of Dr. Kowalski's opening report says, '225Mbps

represents a conservative estimate of 5th percentile user experienced data rate for band n77.' In other words, the field test measurements validate *the ITU Report*, not AT&T's network." Dkt. No. 239 at 12 (emphasis added by Plaintiff). Next, Plaintiff contends that "Defendants' argument that 'Dr. Kowalski's Downlink Measurements are Irrelevant to Ericsson Base Stations,' misses the point because the field tests were used only to validate that the ITU Report's baseline spectral efficiency values were conservative." *Id.* Finally, Plaintiff contends that "Defendants state that 'Dr. Kowalski cannot show that he even used 5G in the measurements in his opening report.' But in his deposition, Dr. Kowalski pushed back on that notion, pointing to the '5G-plus' notation in his screenshots of his phone and his knowledge of AT&T's advertising regarding 5G on its non-standalone 5G network." *Id.*

As a preliminary matter, the Court has already found that issue preclusion applies to AT&T's Nokia-supplied base stations. Dkt. No. 507. Accordingly, Dr. Kowalski's opinions concerning only Nokia base stations are now irrelevant and are hereby **STRICKEN**. As to his remaining opinions, the Court agrees with Plaintiff, at least insofar as Defendants' arguments do not merit exclusion of the testimony.

### E. Methodology B

Next, Defendants move to exclude opinions relating to Dr. Kowalski's "Methodology B." Dkt. No. 199 at 13. Here, Defendants also contend that the Ericsson simulation that Dr. Kowalski relies upon is unrelated to AT&T's network and is unrelated to the patented technology. *Id.* at 13–15. Defendants also contend that the field tests that Dr. Kowalski relies upon either do not show infringement or do not demonstrate the benefit of the patent. *Id.* They further contest Dr. Kowalski's opinions regarding interference sensing because they contend interference sensing has not been implemented on the AT&T network. *Id.* at 14.

Daingean responds that Dr. Kowalski's analysis relies on a highly regarded research paper and Defendants' own internal documents, making it reliable. Dkt. No. 239 at 4. Daingean further contends that his analysis is specifically tied to the facts of the case by addressing the problem the '803 patent was solving and the issues carriers encounter with their networks. *Id.* at 5. Additionally, Plaintiff argues that Defendants' arguments go to the weight not admissibility of the evidence.

Dr. Kowalski sufficiently uses his expertise to tie the background art to the patent and to the accused features in this case. Defendants have not shown a basis for further relief. The Court previously denied Defendants' motion for summary judgment regarding the interference sensing feature and found that a fact issue remained as to whether AT&T's base stations are reasonably capable of utilizing this functionality. *See generally* Dkt. No. 512. Thus, opinions on interference sensing should not be stricken from Dr. Kowalski's report.

### F.     Apportionment

Finally, Defendants argue that Dr. Kowalski fails to apportion the benefit of the '803 Patent from the benefits of the accused features. Dkt. No. 199 at 15. Specifically, Defendants allege that "Daingean has accused two different implementations of reciprocity-based beam forming or beam management of practicing the same claim. Even if infringement were established, the wide range of improvements shown in Ericsson's RAT/RAIT simulation shows many factors other than the alleged practice of the '803 patent affect performance." *Id.* They contend that Dr. Kowalski ignores these factors.

In response, Plaintiff argues that "Dr. Kowalski apportioned to account for the benefit of non-infringing features from the benefit of the '803 Patent by analyzing the benefit of the patented technology against non-infringing technology." Dkt. No. 239 at 13. Specifically, Plaintiff argues that "he first used peer-reviewed research literature to estimate the loss in spectral efficiency and

7

throughput where inter-cell interference is present compared to systems where inter-cell interference is not present, determining that the presence of inter-cell interference resulted in a reduction of 50%. Then, he explained why he reduced that 50% to between 22.2% and 30% to account for 'the non-orthogonality of SRS and the benefit attributable to interference mitigation methods already present in the standard,' such as 'sequence hopping, group hopping, and orthogonal covering codes' as well as accounting for 'different types of inter-cell interference mitigation techniques that infringe the '803 Patent, such as RAT and RAIT." *Id.* (citing Dkt. No. 199-3 at ¶¶ 43-50, 51-56, 57-60).

The Court agrees with Plaintiff that Dr. Kowalski has apportioned as described above, and that his methods are sufficiently reliable. Accordingly, relief is not merited here.

### III.    CONCLUSION

For the reasons discussed above, the Motion is **DENIED**, except with respect to the Nokia base stations, as discussed above.

**SIGNED this 21st day of August, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE