# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| DAINGEAN TECHNOLOGIES LTD., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:23-CV-00123-JRG-RSP |
| | § | |
| AT&T INC., AT&T CORP., AT&T COMMUNICATIONS LLC, AT&T MOBILITY LLC, AT&T MOBILITY II LLC, and AT&T SERVICES INC., | § § § § | |
| | § | |
| *Defendants*, | § | |
| | § | |
| ERICSSON INC. and NOKIA OF AMERICA CORP., | § § | |
| | § | |
| *Intervenors*. | § | |

## MEMORANDUM ORDER

Before the Court is Plaintiff Daingean Technologies Ltd.'s Motion to Exclude Certain of Ms. Bennis's Opinions Under *Daubert*. **Dkt. No. 196.** For the reasons discussed below, the Court **GRANTS** the Motion **IN PART**.

### I. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow*

*Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

2

means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## II.   ANALYSIS

### A.  Equal Value

First, Daingean moves to exclude Ms. Bennis's assumptions about the purported equal value of patents from comparable licenses. Dkt. No. 196 at 7. Plaintiff argues that similar opinions of Ms. Bennis, and other experts, have been excluded for not being reliable or sufficiently tied to the facts of the case. *Id.* at 7-8; (citing *EcoFactor, Inc. v. Ecobee, Inc.*, No. 6:20-cv-00428, Dkt. No. 208 at 2 (W.D. Tex. June 1, 2023)). Furthermore, Daingean argues that Ms. Bennis improperly fails to analyze the commercial differences between settlement licenses and the hypothetical negotiation. Dkt. No. 196 at 9-10.

Defendants dispute Daingean's characterization of Ms. Bennis's opinions. Defendants maintain that her opinions are based directly on the facts of this case. Dkt. No. 250 at 2. Defendants walk through all the agreements that Ms. Bennis relies on. First, for the Ericsson/IPCom license, Defendants argue that Ms. Bennis's analysis involved estimating a royalty from a license of over 200 patents and patent families. Dkt. No. 250 at 2-3. They assert that Ms. Bennis's approach attributed all of the value of the license to three technically comparable asserted patents even though Ericsson attributed at least some value to the larger portfolio. *Id.* at 3. In other words, explain Defendants, Ms. Bennis's model is conservative in Plaintiff's favor. *Id.* Ms. Bennis applied a similar methodology for both the ATT/IPCom license and the IP Bridge Licenses. *See id.* at 3-5; *compare id.* at 2-3. Next, for the Mitsubishi/Daingean license, which includes the asserted '803 patent, they explain that Ms. Bennis apportions based on the negotiation record. *Id.* at 5-6. Defendants then justify Ms. Bennis's reasonableness check based on Ericsson's royalty rate by

3

pointing out that "Ericsson estimates value based on the number of claim-charted patent families." *Id.* at 6. Finally, Defendants argue that Ms. Bennis appropriately considered the settlement context of the licenses. *Id.* at 8–9.

After review of Ms. Bennis's report, the Court finds that her analysis is sufficiently tied to the facts of this case. Ms. Bennis does not arbitrarily assign equal value to all patents in a license, as Daingean suggests. Instead, she analyzes the specific context of the license and the parties to those licenses' negotiating positions. Furthermore, she sufficiently analyzed the settlement context of the license that arose in that context. Therefore, the Court finds that Ms. Bennis's opinions about apportionment pass muster under *Daubert* and associated precedent.

### B. 'Meet in the Middle' Opinions

Daingean then argues that Ms. Bennis offers opinions on the impermissible assumption that the negotiation parties would meet in the middle related to the transfer of patents which included the '803 Patent. Dkt. No. 196 at 10 (citing *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-cv-911-JRG, 2016 WL 4440255, at *14 (E.D. Tex. Aug. 23, 2016) (rejecting rule-of-thumb valuations as impermissible). Specifically, Daingean asserts that "Ms. Bennis starts with Arigna's estimated damages of $22,170,000 and '[a]ssum[es] a meet in the middle negotiated value of $11,085,000'" without any further support. *Id.* at 11 (citing Dkt. No. 196-3 at ¶¶ 81, 84, 217, 228).

In response, Defendants argue that "[i]n her analysis of the Mitsubishi-Daingean Patent Transfer, Ms. Bennis notes that the agreement does not include an express dollar amount, but settles a claim asserted by Arigna. The parties disagreed on the amount; Arigna valued the claim at $22 million based on a speculative award in a patent infringement case; Mitsubishi thought the demand for $22 million represented an 'outlandish and baseless amount of alleged damages.'"

4

Dkt. No. 250 at 9-10. Defendants then explain that, as a result of this, "Ms. Bennis used $11 million as the value of the agreement (or the midpoint of the two amounts)," and that this "was a conservative estimate, as referenced in paragraphs 72 to 84 of Ms. Bennis's Rebuttal Report, which reviews the settlement discussions between the parties." *Id.* at 10 (citing Dkt. No. 196-3 at ¶¶ 72-84). Specifically, they assert that "Mitsubishi's evaluation that the $22 million figure was 'baseless' has more weight than Arigna's perception of the value of its claims, because Mitsubishi was the party to the hypothetical negotiation seeking to license the '803 patent. Further, the underlying claim for $22 million stemmed from a 2021 patent transfer agreement where Mitsubishi transferred 35 patent families for $670,000 in total (about $19,000 per patent family). The Mitsubishi-Daingean Patent Transfer agreement limited total damages due to a breach of warranty to $100,000, which provides insight into Mitsubishi's estimation of reasonable damages. All this evidence suggests a *de minimis* valuation. Accordingly, Ms. Bennis's mid-point was conservative." *Id.* at 10. In sum, Defendants contend that, although Ms. Bennis selected the middle of the road, her analysis (1) was properly tethered to the facts of the case and not based on nothing more than an arbitrary real-of-thumb; and (2), to the extent there are any assumptions or biases, they act in Daingean's favor. *Id.*

Having reviewed the relevant sections of her report, the Court finds that Ms. Bennis's opinions are sufficiently tied to the facts of the negotiation to be helpful to the jury.

### C. Royalty Stacking

Next, Daingean accuses Ms. Bennis of improperly relying on a royalty stacking theory. Dkt. No. 196 at 12. According to Daingean, it is improper for her to opine that because the 5G standard contains thousands of patents Plaintiff's damages theory would make paying royalties on all those patents untenable. *Id.* at 12-13.

Defendants respond that Ms. Bennis's opinions are proper rebuttal to Plaintiff's damages opinions. Dkt. No. 250 at 11. Defendants explain that Mr. Dell, Plaintiff's damages expert, opines that AT&T would agree that 22%-30% of customer revenue is attributable to the '803 patent because the '803 patent purportedly increases throughput by that percentage. *Id.* Defendants argue that that assumption is illogical because other patents that make up, for example, the 5G standard, increase throughput by several hundred percent. *Id.* at 11.

The Court finds nothing unreliable nor impermissible in this approach. Plaintiff fails to persuasively demonstrate that Defendants should not be able to present evidence showing potential deficiencies in Plaintiff's damages theories. This portion of her opinion does not merit striking.

### D. ROIC

Next, Daingean seeks to exclude Ms. Bennis's opinions on operating profit or ROIC (return on invested capital). Dkt. No. 196 at 13. According to Daingean, Ms. Bennis does not herself agree with her own methodology. *Id.*

Defendants respond that Ms. Bennis's opinions directly respond to Mr. Dell's. Dkt. No. 250 at 12-13. Defendants argue that examining and criticizing another expert's work is the traditional role of experts. *Id.* at 13-14.

The Court agrees with Defendants. An expert should be allowed to respond to the methodology of the adversary's expert. To the extent Ms. Bennis has criticized a methodology that Plaintiff alleges that she is now employing, that is proper fodder for cross-examination and potential impeachment. The Court declines to strike on this basis.

### E. Opinions Based on the Nokia License

Next, Daingean argues that "[t]o the extent the Court grants Daingean's motion for summary judgment on the Nokia Cross-License, it should exclude Ms. Bennis's reliance on that

6

agreement as a comparable license." Dkt. No. 196 at 14-15. Daingean also argues that the license is not comparable and cannot be used for her damages opinion. *Id.*

Defendants respond that even if the Court grants Daingean's summary judgment motion, their damages opinions regarding the Nokia license are relevant. Dkt. No. 250 at 14-15. This is because

> Daingean proposes that Mitsubishi is the counterparty to AT&T in any hypothetical negotiation under *Georgia-Pacific*, and that the hypothetical negotiation would take place in March 2022. Knowing that Nokia had the option to license the '803 Patent in 2022, Mitsubishi would have consulted Nokia for assistance in these hypothetical negotiations, including in attempting to value the '803 Patent.

Dkt. No. 250 at 15.

The Court has already found that issue preclusion applies to AT&T's Nokia-supplied base stations. Dkt. No. 507. Accordingly, this license is no longer relevant to any of the issues remaining in this case, and Ms. Bennis's opinions related to it are hereby **STRICKEN**.

### F.  Opinions Based on Other Experts

Finally, Daingean moves to strike Ms. Bennis's opinions that are premised entirely on Dr. Van der Weide's challenged technical opinions. Dkt. No. 196 at 15. Defendants challenge the bases for those motions to strike, but do not provide an independent basis for keeping these opinions of Ms. Bennis.

The Court concurrently grants parts of Daingean's Motion to Strike Dr. van der Weide. To the extent that Ms. Bennis relies on the stricken opinions of Dr. van der Weide, the Court **STRIKES** those portions of Ms. Bennis's report.

**SIGNED this 22nd day of August, 2025.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE