IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DAINGEAN TECHNOLOGIES LTD., § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> AT&T INC., AT&T CORP., AT&T § <br> COMMUNICATIONS LLC, AT&T § <br> MOBILITY LLC, AT&T MOBILITY II § <br> LLC, and AT&T SERVICES INC., § <br> § <br> *Defendants*, § <br> § <br> ERICSSON INC. and NOKIA OF § <br> AMERICA CORP., § <br> § <br> *Intervenors*. § | CIVIL ACTION NO. 2:23-CV-00123-JRG-RSP |

**MEMORANDUM ORDER**

Before the Court is Plaintiff Daingean Technologies Ltd.'s Motion to Strike Certain Opinions of Ericsson's Expert Sebastian Faxér. **Dkt. No. 195.** For the reasons discussed below, the Court **DENIES** the Motion.

### I.   LEGAL STANDARD

#### A.   Expert Witnesses Generally

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed

testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

### B. Retained and Non-Retained Expert Witnesses

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires that an expert disclosure be accompanied by a written report "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." FED. R. CIV. P. 26(a)(2)(B).

Rule 26(a)(2)(C) experts are those that do not fall under Rule 26(a)(2)(B). FED. R. CIV. P. 26(a)(2)(C). These experts only require disclosure of the subject matter on which the witness is expected to present evidence, and a summary of the facts and opinions to which the witness is expected to testify. *Id.* However, these Rule 26(a)(2)(C) witnesses are "confined to testifying only to opinions that arise from [their] 'ground-level involvement in the events giving rise to the litigation.'" *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, No. 13-0366, 2016 U.S. Dist. LEXIS 73985, at *40 (E.D. La. June 7, 2016) (citing *Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011)); *see also Meier v. UHS of Del., Inc.*, No. 4:18-cv-00615, 2020 U.S. Dist. LEXIS 33082 at *24 (E.D. Tex. Feb. 26, 2020) (Rule 26(a)(2)(C) expert's testimony "arises…from his ground-level involvement in the events giving rise to the litigation.").

## II. ANALYSIS

In the Motion, Plaintiff seeks to exclude certain testimony of Mr. Faxér, arguing that (1) his disclosed testimony is improper for a Rule 26(a)(2)(C) witness; (2) Mr. Faxér's testimony was not properly disclosed under Rule 26(a)(2)(B); and (3) Mr. Faxér's infringement and invalidity testimony disclosed in his Rule 26(a)(2)(C) disclosure and deposition is unreliable. *See generally* Dkt. No. 195. Thus, Plaintiff seeks to have paragraphs 3, 4, and 6 of Mr. Faxér's Rule 26(a)(2)(C)

3

Disclosure stricken, as well as sections 29:12-34:16, 35:17-60:6 of Mr. Faxér's October 8, 2024 deposition stricken.

The Court will take up each issue in turn.

### A. Propriety of Mr. Faxér's Rule 26(a)(2)(C) Testimony

Plaintiff first asserts that "Mr. Faxér's Rule 26(a)(2)(C) disclosure indicates that he will give expert testimony on 'topics on which he was designated to testify as corporate representative in the case' and 'matters consistent with his deposition testimony in the case,'" (*Id.* at 7-8 (quoting Dkt. No. 195-8 at 1)) and that "[t]his testimony allegedly includes his 'knowledge of Ericsson's 5G NR base station design and operation' particularly, 'his knowledge of Ericsson's 5G NR base stations as used in AT&T's accused network'" (*Id.* at 8 (quoting Dkt. No. 195-8 at 1-2)). "However," continues Plaintiff, Mr. Faxér was designated as both Ericsson's corporate witness in addition to being deposed in his personal capacity, and that "[t]herefore, under Federal Rule of Civil Procedure 30(b)(6) he had to be prepared to answer questions based on the topics in the deposition notice." *Id.* Plaintiff argues that the problem here is that "[w]hile some of Mr. Faxér's testimony was likely based on his personal knowledge of Ericsson's systems, he also 'relie[d] on information supplied in the litigation context.'" *Id.*

Particular areas where Plaintiff claims that Mr. Faxér appears poised to give improper testimony not based on his 'ground-level involvement in the events giving rise to the litigation' include (1) that Ericsson restricted its Interference Sensing feature, including a related email on this; (2) testimony about an infringement analysis he performed; and (3) testimony about invalidity. *Id.* at 8-9. Specifically, Plaintiff contends that, with respect to (2) and (3), Mr. Faxér is not competent to give opinion testimony regarding invalidity and non-infringement, as this is the ambit of retained experts. *See id.* With respect to (1), Plaintiff contends that the testimony

4

regarding the email[1] is also impermissible because it is in service to an invalidity opinion, and Mr. Faxér testified that his invalidity opinion was based on discussions with outside counsel; thus it was not derived from his 'ground-level involvement.' *Id.* at 8.

In response, Defendants represent that they "[do] not plan to have Mr. Faxér testify to any personal *opinion* he may have regarding infringement or invalidity of the '803 patent." Dkt. No. 246 at 6 (emphasis in original). They contend that "[t]he only discussion of Mr. Faxér's personal opinion of infringement was the result of counsel for Daingean asking Mr. Faxér "[d]id you do any infringement analysis for the '803 patent?" *Id.* at 6-7 (quoting Dkt. No. 246-7 at 31:9-10). To this, Mr. Faxér responded that "with his opinion of non-infringement (including the basis therefor)." Consequently, Defendants contend that "[t]estimony elicited by counsel for Daingean concerning topics not in Mr. Faxér's disclosure and that he does not intend to testify to is not appropriate subject matter for a motion to strike." *Id.* at 7. They further contend that "[t]o the extent that Daingean intends to ask Mr. Faxér about his personal opinion regarding infringement at trial, it is well within Ericsson's right to address these issues raised by Daingean on redirect." *Id.*

Defendants also argue that, with respect to paragraphs 3 and 4 of Mr. Faxér's disclosure, Plaintiff seeks to strike on the basis that it allegedly includes "testimony regarding how Ericsson's base stations purportedly do not meet certain limitations of the '803 Patent." *Id.* (quoting Dkt. No. 195 at 2, 8-9). Defendants contend that this is "a gross mischaracterization of the content of Mr. Faxér's disclosure" and that his proposed testimony "does not provide any mapping of the language of '803 patent to Ericsson's accused base stations, nor does it contain any mention of the '803 patent at all." *Id.* They assert that it instead "relates to the operation of Ericsson's base stations

---

[1] Plaintiff states that the contents of the email concerned "Ericsson's view that the '803 patent was invalid in part because 'SRS-based beamforming has long existed and predates Daingean's patent.'" Dkt. No. 195 at 8 (quoting Dkt. No. 195-9 at 30:5-10).

and describes *how* these base stations perform beamforming," which Mr. Faxér is "clearly qualified to testify" about. *Id.* (citing Dkt. No. 246-4 at ¶ 2).

Next, Defendants argue that, with respect to paragraph 6 of Mr. Faxér's disclosure, Plaintiff seeks to strike on the basis that it "cites to documents[2] referencing the opinion that the '803 patent is invalid because SRS-beamforming long predates it." *Id.* at 8. Defendants represent that they will not ask Mr. Faxér "questions about the invalidity of the '803 patent," and further, that "Mr. Faxér does not have an invalidity opinion to strike, as he testified during deposition that he did not do any invalidity analysis of the '803 patent." *Id.* Defendants clarify that the citation to these Reference Documents in Mr. Faxér's disclosure is to support his planned testimony that "Ericsson has put Interference Sensing on restriction—making sure that AT&T will not test, use, or receive this feature in any way, shape or form during the pendency of this case." *Id.* (quoting Dkt. No. 246-4 at ¶ 6).

With respect to their first point, the Court **DENIES** as **MOOT** exclusion of deposition testimony elicited by Plaintiff of Mr. Faxér's opinions on infringement and invalidity that are not found in his 26(a)(2)(C) disclosure. To be clear, because such opinion testimony is not found in his 26(a)(2)(C) disclosure, Mr. Faxér may not testify about this in his capacity as a non-retained expert witness unless Plaintiff first opens the door at trial, in which case, Defendants may seek leave to address this on re-direct examination. *See Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc., No.* 6:11-CV-492-RWS-KNM, 2017 WL 4173468 at *7-8 (E.D. Tex. Sept. 21, 2017); *see also United States v. Stallings*, No. 19-11300, 2023 WL 3534445 at *7 (5th Cir. May 18, 2023), cert. denied, 144 S. Ct. 366, 217 L. Ed. 2d 196 (2023).

---

[2] Dkt. No. 246-5; Dkt. No. 246-6. Hereinafter, the "Reference Documents."

6

With respect to Defendants' second point, the Court agrees. So long as Mr. Faxér does not go beyond his disclosure and does not testify about things outside of his knowledge gained from his 'ground-level involvement,' then such testimony is permissible. Should he violate this, then Plaintiff may resolve that through contemporaneous objection.

Finally, with respect to Defendants' third point, the Court finds that—in view of Defendants' representation that they will not ask Mr. Faxér questions about the invalidity of the '803 patent—this issue is now moot.

### B. Disclosure of Rule 26(a)(2)(B) Testimony

Plaintiff next asserts that Mr. Faxér's testimony was not properly disclosed under Rule 26(a)(2)(B). Dkt. No. 195 at 10. In essence, Plaintiff reiterates its arguments regarding Mr. Faxér's testimony on invalidity and non-infringement from Section II.A above and now contends that, because this is the purview of retained expert testimony, Mr. Faxér's failure to submit a Rule 26(a)(2)(B) written report means that he is precluded from testifying on these topics. *See id.* at 10-12.

In response, Defendants effectively talk past Plaintiff's arguments and simply argue that Mr. Faxér is competent to testify as a non-retained expert who is, therefore, not required to submit a written report. Dkt. No. 246 at 9-10.

To the extent that there remains a live dispute in view of the Court's previous findings in Section II.A above, we find as follows: (1) Mr. Faxér qualifies as a non-retained expert who is competent to testify about (*inter alia*) beamforming features used in Ericsson's 5G NR products and beamforming features used in Ericsson's 5G NR products; and (2) Mr. Faxér may only testify, in his capacity as a non-retained expert, about things that are both disclosed in the Rule 26 disclosure and within his knowledge gained from his 'ground-level involvement.' Should Plaintiff

believe that Mr. Faxér has strayed outside of knowledge gained from his 'ground-level involvement,' then this will, again, be resolved through contemporaneous objection.

### C. Reliability of Rule 26(a)(2)(C) Testimony

Finally, Plaintiff asserts that Mr. Faxér's infringement and invalidity testimony disclosed in his Rule 26(a)(2)(C) disclosure and deposition should be excluded as unreliable. Dkt. No. 195 at 12. Plaintiff is, once again, asserting that Mr. Faxér is going to offer opinions on invalidity and non-infringement that is outside his capacity as a non-retained expert. Defendants respond that they will not "ask Mr. Faxér questions about the invalidity of the '803 patent." Dkt. No. 246 at 8.

For both the reasons discussed above, and in view of Defendants' representations, the Court finds this issue moot. *See PACT XPP Techs., AG v. Xilinx, Inc.*, No. 2:07-CV-563-RSP, 2012 WL 1205855, at *3 (E.D. Tex. Apr. 11, 2012).

Accordingly, the motion is **DENIED** as moot.

**SIGNED this 22nd day of August, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE