# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| DAINGEAN TECHNOLOGIES LTD., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO. 2:23-CV-00123-JRG-RSP |
| AT&T CORP., AT&T MOBILITY LLC, AT&T MOBILITY II LLC AND AT&T SERVICES INC., | § § § § | |
| *Defendant,* | § § § | |
| ERICSSON INC. and NOKIA OF AMERICA CORPORATION, | § § § | |
| *Intervenors.* | | |

## [PROPOSED] FINAL JURY INSTRUCTIONS[1]

---

[1] Submissions agreed to by both Daingean and Defendants are not highlighted. Submissions proposed by Daingean but not agreed to by Defendants are highlighted in green. Submissions proposed by Defendants but not agreed to by Daingean are highlighted in yellow. The parties have entered their objections, explanations, citations, and commentary in footnotes only.

## <u>TABLE OF CONTENTS</u>

Introductory Instructions ........................................................................................1

Summary of Contentions ........................................................................................8

Patent Claims ........................................................................................................10

Person of Ordinary Skill in the Art......................................................................12

Claim Limitations .................................................................................................13

Direct Infringement ..............................................................................................15

Invalidity Generally .............................................................................................20

Prior Art ...............................................................................................................21

Anticipation ..........................................................................................................23

Enablement ...........................................................................................................24

Damages................................................................................................................26

Post-Closing Instructions .....................................................................................33

# INTRODUCTORY INSTRUCTIONS[2]

Ladies and Gentlemen of the Jury: You've now heard the evidence in this case. I will now instruct you on the law that you must apply.

Each of you will have a copy of these final jury instructions that I am about to give you orally. You will have these instructions for your review when you retire to deliberate in a few minutes. Accordingly, there is no need for you to take written notes on these final jury instructions unless you particularly want to do so.

It is your duty to follow the law as I give it to you. On the other hand, as I have said, you, the jury, are the sole judges of the facts in this case. Do not consider any statement that I have made in the course of the trial or may make in the course of these instructions as an indication that I have any opinion about the facts in this case. You are about to hear closing arguments from the attorneys for both of the parties. Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this form to the jury room, and when you have reached a unanimous agreement as to all answered questions as part of your verdict, you will have your foreperson fill in the blanks in that form, date it, and sign it. Answer the questions as directed in the verdict form from the facts

---

[2] Except where otherwise noted, all submissions are adapted from the Court's Final Jury Instructions in *Daingean Techs. Ltd. v. T-Mobile USA, Inc.*, No. 2:23-CV-00347-JRG-RSP (E.D. Tex. July 11, 2025).

as you find them to be. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all of the witnesses, regardless of who may have called them, and you may consider all the exhibits received and admitted into evidence, regardless of who may have introduced them.

You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all of the evidence. In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You alone are to determine the questions of credibility or truthfulness of the witnesses.

In weighing the testimony of the witnesses, you may consider a witness's manner and demeanor on the witness stand, any feelings or interest they may have in the case, any prejudice or bias about the case that the witness may have, and the consistency or inconsistency of their testimony, considered in light of the circumstances. Has the witness been contradicted by other evidence? Has he or she made statements at other times and places contrary to what he or she said on the witness stand? You must give the testimony of each witness the amount of credibility that you think it deserves.

You must also keep in mind, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth. You must consider whether any

misstatement was an intentional falsehood or a simple lapse in memory and what significance should be attached to that testimony.

As I have told you previously, the attorneys in this case are advocates for their competing clients, and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of this Court. When the Court sustained an objection to a question addressed to a witness, you must disregard that question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer. If the objection was overruled, then you may treat the answer to that question just as you would treat the answer to any other question as if the objection had not been made. By allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

Now, at times during the trial it was necessary for the Court to talk with the lawyers outside of your hearing at the bench, or by calling a recess and talking to them while you were out of the courtroom. This happened because often during a trial, something comes up that does not involve the jury. You should not speculate about what was said during such discussions that took place outside of your presence.

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, proof of a chain of circumstances that indicates the existence or non-existence of certain other facts. As a

general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented, both direct and circumstantial.

Certain testimony in the case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person or if the rules of procedure otherwise permit, then the witness's testimony may be presented under oath in the form of a deposition.

Before this trial began, the attorneys representing the parties in this case questioned these deposition witnesses under oath. At that time, a court reporter was present and recorded their sworn testimony. Deposition testimony is entitled to the same consideration by you as testimony given by a witness in-person from the witness stand in open court. Accordingly, you should judge the credibility and importance of the deposition testimony to the best of your ability, just as if the witness had testified before you in open court.

Now, while you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case. However, you should not base your decision on any evidence not presented by the parties during this case,

including your own personal experience with any particular products that are at issue in the case.

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all of the evidence, you believe that single witness.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—called an "expert witness"—is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is solely up to you to decide whether to rely upon it or not.

Certain exhibits shown to you during the trial were illustrations. We call these types of exhibits "demonstrative exhibits" or "demonstratives." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstrative exhibits are sometimes called "jury aides." Demonstrative exhibits themselves are not evidence, but a witness's testimony concerning a demonstrative exhibit is evidence. Demonstrative exhibits will not be available for you to view during your deliberations.

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on Plaintiff for

some issues and on Defendants for other issues. There are two burdens of proof that you will apply in this case: "preponderance of the evidence" and "clear and convincing evidence."

The named defendants in this case are AT&T Corp., AT&T Mobility LLC, AT&T Mobility II LLC, and AT&T Services Inc., who you have heard referred to collectively through the trial as "AT&T." In addition to AT&T, Ericsson Inc. has intervened in this case on the side of AT&T after the case was filed. Technically, this means that Ericsson is known as an "intervenor." Practically speaking, though, Ericsson is working cooperatively with AT&T to defend against the allegations brought by Daingean against AT&T. However, to be clear, Ericsson itself has not been accused of infringement by Daingean in this case even though throughout this trial, you may have heard AT&T and Ericsson collectively referred to as "Defendants."

The Plaintiff in this case, Daingean Technologies Ltd., who you have heard referred to throughout the trial as "Daingean" or "Plaintiff," has the burden of proving patent infringement by a preponderance of the evidence. Daingean also has the burden of proving damages for any patent infringement by a preponderance of the evidence. A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

Defendants have the burden of proving invalidity by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind an

abiding conviction that the truth of the party's factual contentions is highly probable. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.

Now, as I've previously told you, ladies and gentlemen, these two burdens of proof are not to be confused with a third and altogether different burden of proof known as "beyond a reasonable doubt," which is the burden of proof applied in a criminal case. It has no application in a civil case such as this. Beyond a reasonable doubt is a higher standard than both the preponderance of the evidence and clear and convincing evidence standards.

# SUMMARY OF CONTENTIONS

As I did at the start of the trial, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously advised you, this is an action for patent infringement. Daingean contends that AT&T infringes Claim 12 of U.S. Patent No. 8,576,803, which you have heard referred to as the "'803 Patent." I may also refer to the '803 Patent generally as the "Asserted Patent" or the "Patent-in-Suit." Claim 12 of the '803 Patent is sometimes referred to as the "Asserted Claim."

Daingean contends that AT&T has infringed the Asserted Claim by using in the United States 5G base stations for a communication system in the AT&T 5G cellular network. Sometimes in these instructions I may refer to these base stations as the "Accused Products." Daingean contends that the Accused Products infringe Claim 12 of the '803 Patent. Daingean contends that it is entitled to money damages in the form of a lump sum reasonable royalty for AT&T's infringement. Daingean has the burden to prove these issues by a preponderance of evidence.

Defendants deny that the Accused Products infringe the Asserted Claim of the '803 Patent. Defendants deny that AT&T owes Daingean any money damages.

Defendants further contend that the Asserted Claim of the '803 Patent is invalid because it is not new and because the specification does not enable the full scope of

the claimed invention. Defendants have the burden to prove invalidity by clear and convincing evidence.

If you decide that the Asserted Claim has been infringed and is not invalid, you will then need to decide the amount of money damages, if any, to be awarded to Daingean to compensate it for that infringement.

# PATENT CLAIMS

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of the patent. The claims define Daingean's rights under the law. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims themselves that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what the claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claim and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claim and I have provided to you my definitions of certain claim terms. These definitions can be found in your juror notebooks. You must accept my definitions of these words in the claim as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and invalidity.

You should disregard any evidence presented at trial that contradicts or is inconsistent with the constructions and definitions that I have given you. For claim limitations that I have not construed—that is, limitations that I have not interpreted or defined—you are to use the plain and ordinary meaning of the limitations as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent, at the time of the alleged invention. The meaning of the words of the patent claims must be the same when deciding both infringement and invalidity. You have been provided with a copy of the Asserted Patent, which is inside your juror notebooks, and you may use it in your deliberations.

# PERSON OF ORDINARY SKILL IN THE ART

Several times in my instructions I have referred or will refer to a person of ordinary skill in the field of the invention, or a person of ordinary skill in the art. It is up to you to decide the level of ordinary skill in the field of the invention.

In deciding the level of ordinary skill in the field, you should consider all the evidence introduced at trial, including but not limited to:

1.    The levels of education and experience of the inventors and other persons actively working in the field;

2.    The types of problems encountered in the field;

3.    Prior art solutions to those problems;

4.    The rapidity with which innovations are made; and

5.    The sophistication of the technology.

The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

# CLAIM LIMITATIONS

I will now explain how a claim defines what it covers.

A claim sets forth in words a set of requirements. Each claim sets forth its requirements in a single sentence. If a product satisfies each of the requirements in that sentence, then it infringes the claim. There can be several claims in a patent, and each claim may be narrower or broader than any other claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by claim basis. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation or element of a claim, the product is not covered by the claim. If the product is not covered by the claim, that product cannot infringe the claim.

If a person or corporation uses within the United States what is covered by a patent claim without the patent owner's permission, that person or corporation is said to infringe the patent.

To determine whether there is infringement, you must compare the Asserted Claim, as I have defined it, to the Accused Products. You should not compare the Accused Products with any specific example set out in the patent or with the prior art in reaching your decision on infringement. In deciding infringement, the only correct

comparison is between the Accused Products and the limitations of the Asserted Claim as the Court has construed it. AT&T is liable for infringement if you conclude that any accused use infringes.[3] You must reach your decision as to infringement based on my instructions about the meaning and the scope of the claim, the legal requirements for infringement, and the evidence presented to you by both of the parties.

---

[3] Defendants' position: Daingean proposed adding this language to the *T-Mobile* final jury instructions over Defendants' objection. Defendants maintain their objection here. Daingean has cited no authority for providing this instruction to the jury. Other instructions fully cover the points of law the jury needs to resolve infringement issues, and to the extent necessary, the additional instructions in the verdict form amply direct the jury on how to answer the verdict questions. This instruction improperly and misleadingly suggests (in conjunction with Daingean's proposed "reasonable capability" instruction below) that AT&T is "liable" for "any" use of a base station that is capable of infringing, even if AT&T used that base stations ***only*** in noninfringing modes, when "reasonable capability" requires proof that the accused products actually perform the claimed functions at least some of the time or actually performed the claimed functions at least once. *See INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1376 (Fed. Cir. 2022). This instruction also needlessly injects the concept of "liability," which is not referenced anywhere else in the instructions or anywhere in the verdict form. It is inaccurate, moreover, since AT&T is not necessarily "liable" based on an infringing use given its invalidity defense. In the end, this instruction is no more than a closing-argument point that Daingean can make if it chooses, but is not a necessary or helpful legal point that should be given the Court's imprimatur through a jury instruction.

Daingean's position: The Court included this instructions to the jury in the *Daingean v. T-Mobile* case and the same instruction should be included in this case. *See* Final Jury Instructions at 13, *Daingean Techs. Ltd. v. T-Mobile USA, Inc.*, No. 2:23-CV-00347-JRG-RSP (E.D. Tex. July 11, 2025) (not filed). First, this instruction correctly informs the jury that when a defendant has multiple uses for a device, defendant is liable for infringement if the jury concludes that one of those uses by the defendant infringes. This is a well-settled principal of patent law. *See, e.g., SRI Int'l Inc. v. Internet Sec. Sys., Inc.*, 647 F. Supp. 2d 323, 338 n.10 (D. Del. 2009), aff'd, 401 F. App'x 530 (Fed. Cir. 2010) ("Even a single infringing act may support a verdict of infringement."); *see also Intellectual Ventures II LLC v. FedEx Corporation*, 2019 WL 5784171, at *3 (E.D. Tex. Mar. 28, 2019) (Gilstrap, J.) (*citing SRI Int'l Inc. v. Internet Sec. Sys.*, 647 F. Supp. 2d 323, 338 n.10 (D. Del. 2009)) ("The Court notes that infringement requires only a single infringing act, such as could be performed during testing."). Second, defendants unnecessarily conflate this well- known principal with the "capability" issue which goes to the underlying question of whether a particular use of a device infringes. This "capability" issue is expressly addressed in the "Direct Infringement" instruction. Finally, the concept of "liability" for infringement is well understood by the jury and in the context of the evidence and arguments presented by the parties at trial.

# DIRECT INFRINGEMENT

I will now instruct you on the specific rules that you must follow to determine whether Daingean has proven by a preponderance of the evidence that AT&T has infringed the Asserted Claim by using the Accused Products in the United States.

A patent can be infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it did was infringement of the claim. A patent claim may also be infringed even though the accused infringer believed in good faith that what it did was not an infringement of the patent.[4]

---

[4] The Court included this instructions to the jury in the *Daingean v. T-Mobile* case and the same instruction should be included in this case. *See* Final Jury Instructions at 13, *Daingean Techs. Ltd. v. T-Mobile USA, Inc.*, No. 2:23-CV-00347-JRG-RSP (E.D. Tex. July 11, 2025) (not filed); *see also* Final Jury Instructions at 14, *Pardalis Tech. Licensing, LLC v. Int'l Business Machines Corp.*, No. 2:22-cv-00452-JRG-RSP (E.D. Tex. Sep. 26, 2024) (not filed); *see also* Final Jury Instructions at 11, *General Access Solutions, Ltd. v. Cellco Partnership D/B/A Verizon Wireless et al.*, No. 2:22-cv-00394-JRG (E.D. Tex. Jun. 27, 2024) (not filed); Final Jury Instructions at 10, *Atlas Global Tech., LLC v. TP-Link Tech. Co., Ltd.*, No. 2:21-cv-00430-JRG-RSP (E.D. Tex. Sep. 13, 2023) (not filed); Final Jury Instructions at 11, *Finesse Wireless LLC v. AT&T Mobility LLC*, No. 2:21-cv-00316-JRG (E.D. Tex. Jan. 12, 2023) (not filed). Moreover, AT&T explicitly put the relevance of defendants' state of mind at issue by incorrectly suggesting to the jury in its opening statement that the fact that Daingean did not reach out to defendants before filing suit somehow precludes a finding of infringement. *See, e.g.,* Trial Transcript at 193 ("One interesting thing happened when AT&T got sued in this case. Daingean didn't come to them beforehand. They just filed the lawsuit, served it on us.").

Defendants' position: These instructions are unhelpful, unnecessary to understanding infringement, and inapplicable on the facts. This Court must give a requested instruction "only if the instruction (1) was a substantially correct statement of law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the party's ability to present a given claim." *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 484 (5th Cir. 2021) (cleaned up). These instructions about Defendants' subjective state of mind are not part of the standard for direct infringement, are not needed for Daingean to present its claims, and are not applicable as Defendants do not argue subjective "good faith" or the like as a defense. Alternatively, the Court should move this instruction to the end of the instructions on infringement rather than unduly emphasizing inapplicable subjective-state-of-mind issues by placing it first, before the governing standard on infringement.

15

To prove infringement, Daingean must prove by a preponderance of the evidence that AT&T used within the United States a product that meets each and every limitation of the Asserted Claim. To determine whether the Accused Products infringe the Asserted Claim, you must compare the Accused Products with each of the limitations of the Asserted Claim to determine whether all of the requirements of that claim are met. To use a system for purposes of infringement, a party must put the invention into service, i.e., control the system as a whole and obtain benefit from it.[5] To infringe a claim that recites capability and not actual operation, an accused device need only be capable of operating in the described mode. An accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of non-infringing modes of operation. However,[6] a device does not infringe

---

[5] *Centillion Data Sys., LLC v. Qwest Commun. Intern., Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).

[6] The Court included this instructions to the jury in the *Daingean v. T-Mobile* case and the same instruction should be included in this case. *See* Final Jury Instructions at 14, *Daingean*; *see also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) ("An accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of noninfringing modes of operation."); *Fantasy Sports Props. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002); *United Servs. Auto Ass'n v. PNC Bank N.A.*, 2022 U.S. Dist. LEXIS 82529, at *13-14 (E.D. Tex. Apr. 17, 2022).

Defendants' position: These instructions concern Daingean's infringement theory for Ericsson Interference Sensing (RAIT), which does not depend on actual "use" of this accused feature but requires only use of an apparatus (base station) capable of meeting the claim elements. An instruction on "reasonable capability" is inapplicable and should not be given for four reasons.

*First*, claim 12 is not drawn to capability. The claim describes a *base station* (*i.e.*, an apparatus) that *transmits* data (*i.e.*, actual function/operation) based on specified things. It is therefore an invalid mixed-class claim and, at any rate, requires actual operation (transmitting based on the specified things). Defendants recognize that the court construed the claim as reciting a "base station configured to transmit…," a construction urged by neither party. ECF No. 304 at 21–22. Defendants renew their objection to that construction and object to a "capability" instruction on that basis.

*Second*, Daingean's "capability" theory is not viable because, on the undisputed facts, Ericsson's base stations in AT&T's network were incapable of implementing the interference-sensing feature.

simply because it is possible to alter it in a way that would satisfy all the limitations of

a patent claim. If a defendant could not readily activate the allegedly infringing

functionality in an accused product, or if it could only infringe if it modified an accused

_____

Thus, unlike in the *Finjan* case cited by Daingean, but like in *Provisur Techs., Inc. v. Weber, Inc.*, "[t]his is not an infringement scenario where customers can simply activate the infringing configuration." 119 F.3d 948, 954 (Fed. Cir. 2024) (reversing denial of JMOL of noninfringement on facts like these). Defendants briefed this issue in their summary-judgment motion challenging alleged infringement by Ericsson Interference Sensing. *See* ECF Nos. 202, 282.

**Third**, "[i]n contexts involving software functionality, [the Federal Circuit has] never suggested that reasonable capability can be established without any evidence or undisputed knowledge of an instance that the accused product performs the claimed function when placed in operation." *INVT SPE LLC v. Int'l Trade Comm'n*, 46 F.4th 1361, 1376 (Fed. Cir. 2022). Rather, "[b]ecause [the Federal Circuit] require[s] claim limitations to have some teeth and meaning, proof of reasonable capability of performing claimed functions requires, at least as a general matter, proof that an accused product—when put into operation—in fact executes all of the claimed functions at least some of the time or at least once in the claim-required environment." *Id.* at 1377; *see also id.* (holding that "because INVT failed to provide any evidence showing that a base station in fact ever sends the user device a data signal that is modulated and encoded using parameters that the user device decided, INVT has failed to prove the required capability"). Thus, it would be inaccurate and misleading to suggest to the jury that it may find reasonable capability without finding that the accused Ericsson base stations in AT&T's 5G network in fact perform the claimed functions at least some of the time, or in fact performed the claimed functions at least once. Daingean undisputedly cannot show that Ericsson Interference Sensing was ever actually put into operation in AT&T's network. Therefore, the reasonable-capability language is inapplicable and should not be given.

**Fourth**, and at any rate, a specific instruction on capability is superfluous and unnecessary to Daingean's infringement case. *See HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 484 (5th Cir. 2021). This Court frequently instructs juries on claims drawn to capability without specifically instructing the jury on *Finjan*'s capability language in addition to the generally applicable standard for infringement. The jury will be instructed on the "configured to" claim construction, and the parties can dispute whether the accused base stations are in fact "configured to" implement Ericsson Interference Sensing without this additional language.

Conditionally, if the Court does not sustain Defendants' objection and delete these instructions entirely, Defendants request an alternative version taken verbatim from the Court's Final Instructions (pp.13–14) in *Headwater Research LLC v. Cellco P'ship*, No. 2:23-cv-00352-JRG-RSP (E.D. Tex. July 23, 2025). This instruction more fairly and accurately presents the disputed issue by tracking the Court's claim construction requiring a base station "configured to" meet the claim's requirements, while not injecting the vague, confusing concept of "capability":

> An Accused Product infringes a claim if it is configured to satisfy each and every claim element, even though it may also be capable of non-infringing modes of operation.

product to operate as recited in the asserted claim, then it does not infringe.[7] Absent an express limitation to the contrary, any use of a device that meets all of the limitations of an apparatus claim written in structural terms infringes that apparatus claim.[8]

A claim element is present if it exists in the Accused Product as it is described in the claim language either as I have explained it to you or, if I did not explain it, according to its plain and ordinary meaning as understood by one of ordinary skill in the art.

If any element recited in a claim is not found in an Accused Product, then you must find that particular product does not infringe that claim. But if an Accused Product has each and every one of the claim limitations, infringement of that claim is

---

[7] This language comes from *Provisur Techs., Inc. v. Weber, Inc.*, 119 F.4 th 948, 955 (Fed. Cir. 2024). That case involves an accused product that required multiple physical modifications to infringe. The facts of this case are different, and it would be confusing to the jury to give this instruction.

Defendants' position: The Court correctly gave this instruction in the *T-Mobile* trial and should give it here for the same reasons. *Provisur* is directly on point: It addressed functionality that the accused users of the allegedly infringing Weber products could not access and activate because the functionality required "programming" (not "multiple physical modifications") using interface screens that the users could not access. To the extent that Ericsson ESI software existed on accused base stations, it is directly analogous to the functionality at issue in *Provisur* because the alleged user here (AT&T) could not access and activate it on Ericsson base stations.

[8] *Paragon Sols., LLC v. Timex Corp.*, 566 F.3d 1075, 1091 (Fed. Cir. 2009) ("Absent an express limitation to the contrary, *any* use of a device that meets all of the limitations of an apparatus claim written in structural terms infringes that apparatus claim." (emphasis in original)).

Defendants' position: Daingean requested this same instruction in the *T-Mobile* trial, and the Court correctly declined to give it there. It should not give it here for the same reasons. An instruction on claims "written in structural terms" is inapplicable and should not be given. This instruction is particularly confusing and unhelpful to the jury because the jury lacks any basis for understanding "an apparatus claim written in structural terms," a series of patent-law terms of art. Indeed, this instruction ultimately adds nothing material to the standard instructions on literal infringement because it simply repeats (with additional legal jargon added in) that a device literally infringes if it meets all the claim limitations.

shown even if the product contains additional features or elements not required by the claim.

# INVALIDITY GENERALLY[9]

I will now instruct you on the rules that you must follow in deciding whether or not Defendants have proven by clear and convincing evidence that the Asserted Claim of the '803 Patent is invalid. Patent invalidity is a defense to patent infringement. Invalidity and infringement are separate and distinct issues that must be separately decided by you.

An issued United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you've heard referred to throughout this trial as the "PTO" or sometimes just "the Patent Office," acted correctly in issuing the patent. This presumption of validity extends to all issued United States Patents.

In order to overcome this presumption of validity, Defendants must establish by clear and convincing evidence that the Asserted Claim is invalid. Therefore, you the jury must determine whether Defendants have proved that the Asserted Claim is invalid.

Claims are construed in the same way for determining infringement as for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity.

---

[9] Daingean previously filed a Motion for Leave to File Motion for Summary Judgment on Defendants' Invalidity Defenses Based on Issue Preclusion. Dkt. No. 499. The Court denied that motion. Dkt. Nos. 509, 529, 548. In order to preserve the issue, Daingean objects to any instructions regarding validity.

# PRIOR ART

As I explained earlier, a previous publication that predates the claimed invention is generally called "prior art." Prior art may include publications that disclose the claimed invention or elements of the claimed invention. Prior art also includes the knowledge of a person of ordinary skill in the art in the United States prior to the date of the invention.

In evaluating the prior art to determine whether invalidity has been proven by clear and convincing evidence, you may consider whether that prior art was or was not before the PTO. If you decide that prior art is different and more relevant than the prior art considered by the PTO, you may weigh that prior art more heavily when considering whether Defendants carried their burden of proving invalidity.[10] If you find that prior art which was not before the PTO is probative, then you may weigh that

---

[10] Federal Circuit Bar Association Model Patent Jury Instructions § 4.3b-1 (May 2020). The instruction that Daingean proposes is incomplete and misleading. While it is strictly true that the jury "may weigh" probative prior art that was not before the PTO, that is equally true of prior art that *was* before the PTO—the fact finder may weight all relevant prior art. To the extent that Daingean's instruction suggests that the fact finder may weigh *only* prior art that was not before the PTO, it is misleading. More important, Daingean's instruction fails to convey the key point, which is *how* the jury should weigh probative prior art not before the PTO: "*more heavily*" than prior art that was before the PTO. The Supreme Court has recognized and endorsed the "commonsense principle that the Federal Circuit has recognized throughout its existence—namely, that new evidence supporting an invalidity defense may '*carry more weight*' in an infringement action than evidence previously considered by the PTO." *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 110 (2011) (emphasis added) (collecting cases). The Supreme Court explained "that a jury instruction on the effect of new evidence can, and when requested, most often should, be given." *Id.* at 111. Both the FCBA (§ 4.3b-1) and AIPLA (§ 5.1) model instructions also recognize and endorse this principle. Defendants are therefore entitled to an instruction on the "effect" of the fact that the PTO did not consider the asserted reference—*i.e.*, that it carries more weight—and not merely an instruction on the fact that the jury may consider such evidence (just as it may consider any other evidence).

prior art when considering whether Defendants carried their burden of proving invalidity.[11]

In deciding validity, the only correct comparison is between the prior art and the limitations of the Asserted Claim. It is improper to compare the prior art to the Accused Product.

---

[11] The Court included this instructions to the jury in the *Daingean v. T-Mobile* case and the same instruction should be included in this case. *See. Daingean Techs. Ltd. v. T-Mobile USA, Inc.*, No. 2:23-CV-00347-JRG-RSP (E.D. Tex. July 11, 2025) Trial Transcript, Vol. 5, at 1226.

# ANTICIPATION

I will now instruct you on how to determine whether the Asserted Claim of the Asserted Patent is invalid as being anticipated. In order for someone to be entitled to a patent, the invention must actually be new. In general, inventions are new when the identical product has not been disclosed before.

Defendants contend that Claim 12 of the '803 Patent is invalid because the claimed invention is not new. In other words, Defendants contend that the Asserted Claim is anticipated by prior art. Anticipation requires that all elements of a patent claim be disclosed in a single prior art reference. Also, the single prior art reference must disclose all of the elements of the claim arranged or combined in the same way as in the claim, as the claim has been construed or interpreted by the Court.

Defendants must prove by clear and convincing evidence that the Asserted Claim was anticipated by the prior art reference.

To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the elements or requirements of the claim must have been disclosed, either expressly or impliedly, to a person having ordinary skill in the art of the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention.

Keep in mind that Defendants may not establish anticipation by arguing that the Accused Products practice the prior art, or by comparing the Accused Products to a prior art reference.

# ENABLEMENT[12]

Another way a patent claim can be invalid is if it fails to disclose sufficient information to enable persons of ordinary skill in the field of the invention at the time the patent application was filed to make and use the full scope of the claimed invention without undue experimentation. This is known as the enablement requirement.

Defendants contend that the asserted claim of the '803 patent is invalid for lack of enablement. To succeed, Defendants must show by clear and convincing evidence that the '803 patent specification (which includes the original claims)[13] does not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention as of the filing date without undue experimentation. If a patent claim is not enabled, it is invalid.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the field of the invention. Thus, a patent need not expressly state information that persons of ordinary skill would be likely to know or could obtain without undue experimentation. Factors you may consider in determining whether persons of ordinary skill in the field

---

[12] Final Jury Instructions at 59–61, *U.S. Silica Co. v. Amberger Kaolinwerke Eduard Kick GmbH & Co.*, No. 2:20-CV-298-JRG (E.D. Tex. Mar. 25, 2022), ECF No. 264; Federal Circuit Bar Association Model Patent Jury Instructions § 4.2b (May 2020).

[13] *Allergan USA, Inc. v. MSN Labs. Priv. Ltd.*, 111 F.4th 1358, 1374 (Fed. Cir. 2024).

of the invention would require undue experimentation to make and use the full scope

of the claimed invention include the following:

1.    the quantity of experimentation necessary and whether that
experimentation involves only known or commonly used techniques;

2.    the amount of direction or guidance disclosed in the patent;

3.    the presence or absence of working examples in the patent;

4.    the nature of the invention;

5.    the state of the prior art;

6.    the relative skill of those in the art;

7.    the predictability of the art; and

8.    the breadth of the claims.[14]

These factors are sometimes called the *Wands* factors. No one or more of these

factors is alone dispositive. Rather, you must make your decision about whether or not

the degree of experimentation required is undue based upon all of the evidence

presented to you. You should weigh these factors and determine whether or not, in the

context of this invention and the state of the art at the time of the filing date, a person

having ordinary skill would need to experiment unduly to make and use the full scope

of the claimed invention.

---

[14] Final Jury Instructions at 17, *General* Access; *Seagen, Inc. v. Daiichi Sankyo Co., Ltd.*, No. 2:20-cv-337-JRG (E.D. Tex.), Trial Transcript, Vol. 5 (Apr. 8, 2022) at 83-84; AIPLA Model Instructions at 40-41.

# DAMAGES

If you find that the Accused Products infringed the Asserted Claim, and that the Asserted Claim is not invalid, you must then consider what amount of damages, if any, to award to Daingean for that infringement.

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case on any issue. If you do not find that AT&T infringed the Asserted Claim, or if you find that the Asserted Claim is invalid, then Daingean is not entitled to damages.

Daingean has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Daingean establishes that it more likely than not suffered as a result of AT&T's infringement. While Daingean is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. Daingean is not entitled to damages that are speculative, damages that are only possible, or damages that are based on guesswork.

The damages you award, if any, must be adequate to compensate Daingean for any infringement you may find. You must not award Daingean more damages than are adequate to compensate for the infringement. You also must not include any additional amount for the purpose of punishing AT&T or setting an example.

I will now instruct you on how to calculate reasonable royalty damages.

In this case, Daingean seeks damages in the form of a lump sum reasonable royalty. The patent laws provide that damages for infringement may not be less than a reasonable royalty. A royalty is a payment made to a patent holder in exchange for the right to use the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when infringement first began. Because Mitsubishi owned the '803 Patent when the alleged infringement first began, the hypothetical licensor in the hypothetical negotiation would have been Mitsubishi, and the hypothetical licensee would have been AT&T.

Evidence of things that happened after infringement first began can be considered in evaluating the reasonable royalty, but only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

The parties agree that the damages you award to Daingean, if any, should be a lump-sum royalty. A lump-sum royalty is when the infringer pays a single, one-time price for a license covering both past and future infringing sales for the life of the patent. Thus, if you find Daingean is entitled to damages, then the damages you award, if any, should reflect the total amount necessary to compensate Daingean for AT&T's past and future infringement.

In considering this hypothetical negotiation, you should focus on what the expectations of the licensor (Mitsubishi) and the licensee (AT&T) would have been

27

had they entered into an agreement at that time and had they acted reasonably in their negotiations. You must assume that both parties believed the Asserted Claim was valid and infringed, and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

The law requires that any damages awarded to the plaintiff correspond to the value of the alleged inventions within the accused products, as distinct from other, unpatented features of the accused products or other factors such as marketing or advertising or AT&T's size or market position. This is particularly true where the accused product has multiple features and multiple components not covered by the patent, or where the accused product works in conjunction with other non-patented items. Therefore, the amount you find as damages must be based on the value attributable to the patented technology. If the unpatented features contribute to an accused product, you must apportion that value to exclude any value attributable to unpatented features. You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone. Daingean bears the burden to establish the amounts attributable to the patented features.

In determining a reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determinations are:

1.    The royalties received by the patentee for the licensing of the patents in suit, proving or tending to prove an established royalty.

2.    The rates paid by the licensee for the use of other patents comparable to the patent in suit.

3.    The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

4.    The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.    The commercial relationship between the licensor and the licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promotor.

6.    The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales

7.    The duration of the patent and the term of the license.

8.    The established profitability of the product made under the patent; its commercial success; and its current popularity.

9.    The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

10.    The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11.    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12.    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor (such as Mitsubishi, the owner of the '803 Patent at the time) and a licensee (such as AT&T) would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount that a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.[15]

You may have heard these factors referred to as the "*Georgia-Pacific* factors." No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your minds would have increased or decreased the royalty AT&T would have been willing to pay and that the patent owner, Mitsubishi, would have been willing to accept, with both acting as normally prudent businesspeople.

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for the rights to the patent in question or for rights to similar technologies. Comparable license agreements are one factor that may

---

[15] The court should submit only these Georgia Pacific factors supported properly supported by competent evidence at trial. *See, e.g.*, *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201 (Fed. Cir. 2014) (holding that the district court could not include all 15 *Georgia-Pacific* factors in its damages instruction without considering their relevance to record created at trial and whether they were misleading). Defendants reserve the right to withdraw or object to unsupported factors.

inform your decision as to the proper amount of the reasonable royalty award. Such licenses may indicate the patented invention's economic value in the marketplace. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between the patent owner and the alleged infringer in order for you to consider it. However, if you choose to rely upon evidence from any other license agreements, you must account for any differences between those licenses and the hypothetically negotiated license, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope, when you make your reasonable royalty determination. In the context of the hypothetical negotiation, it is not necessarily the case that each patent covered by other licenses that were presented contributes equally to the amount that was paid for those licenses.

In considering the evidence of a reasonable royalty, you are not required to accept one specific figure or another for the reasonable royalty. You are entitled to determine what you consider to be a reasonable royalty based upon your consideration of all of the evidence presented by the parties whether that evidence is of a specific figure or a range of figures.

In calculating damages, you may only award damages to Daingean for infringement that occurred after the damages period begins. The damages period for issues related to infringement of the '803 Patent began no earlier than March 7, 2022

and runs through, but not after, January 9, 2028, which is the expiration date of the '803 Patent.

*      *      *

Now, with those instructions, we're ready to hear closing arguments from the attorneys in this case.

# POST-CLOSING INSTRUCTIONS

I would now like to provide you with a few final instructions before you begin your deliberations. You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict regardless of the consequences.

Answer each question in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions accordingly. Again, I remind you, your answers and your verdict in this case must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true even where one party is small, and the other is large. This applies in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect his rights under the laws of the United States. This includes bringing suit in a United States District Court for money damages for infringement. By the same token, an accused infringer is entitled to defend itself against assertions of infringement, including by arguing that it does not infringe the asserted patents and that the asserted patents are invalid. The law recognizes no distinction among types

of parties. All corporations, partnerships, and other organizations stand equal before the law, regardless of their size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you. If during your deliberations you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note signed by your foreperson and delivered to the Court Security Officer, and I then will send that exhibit or exhibits to you. However, demonstratives (as opposed to exhibits) are not evidence, and I will not be able to send any demonstratives to you in the jury room during your deliberations. Once you retire, you should select your Foreperson and then conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your Foreperson is to fill in the verdict form in a manner which reflects your unanimous answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any unanswered question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly

influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, you should give a written message or question signed by the Jury Foreperson to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought into the courtroom, so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case but if at that time you choose to you will be completely free to do so—that decision then will be totally up to each of you.

I will now hand one clean copy of the Verdict Form and eight individual copies of these final jury instructions to the Court Security Officer to deliver to the jury in the jury room.

Members of the jury, you may now retire to the jury room to deliberate upon your verdict. We await your decision.